IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY LEWIS and TIMOTHY TRAPUZZANO )
  on behalf of themselves and all )
  others in the State of )
  Pennsylvania similarly situated, )
                                   )
      Plaintiffs, )
                                   )
      vs. ) CA No. 09-164
                                   )
FORD MOTOR COMPANY, )
                                   )
      Defendant. )

## MEMORANDUM OPINION

Pending before the Court is a motion by putative class action representative plaintiffs Timothy Lewis and Timothy Trapuzzano (collectively, "Plaintiffs"), seeking to remand this case to the Court of Common Pleas of Armstrong County, Pennsylvania, pursuant to 28 U.S.C. § 1447(c). ("Motion to Remand," Doc. No. 5.) Defendant Ford Motor Company ("Ford") opposes the motion to remand and has concurrently filed a motion to dismiss this matter in its entirety pursuant to Fed. R. Civ. Pro. 12(b)(6). ("Motion to Dismiss," Doc. No. 4.) For the reasons discussed below, the Motion to Remand is denied and the Motion to Dismiss is denied without prejudice.

## I. INTRODUCTION

### A. Factual History[1]

During model years 2005, 2006, and 2007, Defendant

---

[1] The facts in this section are taken from the Complaint.

manufactured Ford F-250 and Ford F-350 vehicles and sold them to consumers in the Commonwealth of Pennsylvania. According to Plaintiffs, these vehicles are subject to front-end suspension defects which cause severe oscillation under ordinary driving conditions and create a safety hazard for the drivers of the vehicles as well as other motorists. Specifically, the front-end suspension malfunctions, causing the vehicle to shake violently, which in turn causes the driver to lose control. This "Oscillation Defect" also results in premature wear of other parts of the vehicle, including the steering boxes. When the owner of a Model Year 2005-2007 Ford F-250 or Ford F-350 with the Oscillation Defect ("a Class Vehicle") reported this problem to Defendant's dealers, he or she was told that the problem was an "isolated event," that it was the fault of the consumer, or that the tires on the vehicle were improperly inflated. However, internal Ford documents acknowledge the existence of the Oscillation Defect and show that Defendant knew the suspensions on the Class Vehicles were defective before they were sold.

B. Procedural History

On January 20, 2009, Plaintiffs filed a putative class action suit against Ford in the Court of Common Pleas of Armstrong County, Pennsylvania. Both Plaintiffs seek to represent a class of "all persons who purchased a Class Vehicle in the State [sic] of Pennsylvania, or who owned a Class Vehicle and were forced to sell

2

or trade the vehicle at a loss because of the extreme front end oscillation the vehicles exhibit when contacting typical road surfaces of expansion joints, road reflectors or potholes." (Complaint, ¶ 14, "Class Members.") Their suit first alleges that the selling and marketing of a dangerously defective vehicle constitutes a breach of an express warranty given by Defendant to each Class Member under the "Consumer Product Warranty Act," 15 U.S.C. § 2301 *et seq.*, also known as the Magnuson-Moss Warranty Act (the "Act.") In Count II of the Complaint, Plaintiffs allege that the Oscillation Defects were present when the Class Vehicles left Defendant's possession and were unfit for their ordinary purpose, a violation of the implied warranty provisions of the Act. As damages for these violations of the Act's express and implied warranties, Plaintiffs seek:

   an injunction requiring Ford to pay for replacement of the front suspension of the Class Vehicles and to repair any additional damage to the Class Vehicles free of charge;

   monetary damages, including but not limited to compensatory, incidental or consequential damages commensurate with proof at trial for the acts complained of;

   a declaration that Ford must disgorge, for the benefit of the Class Members, all or part of the "ill-gotten profits" it received from the sale or lease of Class Vehicles equipped with defective front end suspensions;

   attorneys fees pursuant to 15 U.S.C. § 2310;

   costs;

   pre- and post-judgment interest on any amounts awarded; and

3

all other relief the Court deems just and appropriate.

(Complaint at 9.)

In Count III of their Complaint, Plaintiffs allege violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* ("Consumer Protection Law.") Plaintiffs allege that they and the other Class Members are persons who purchased a good or service primarily for personal, household or family uses. They further allege that Ford recklessly, wantonly, and willfully violated the Consumer Protection Law by failing to comply with the terms of the written warranty associated with the sale of the Class Vehicles, by ignoring the Oscillation Defect, and by marketing the Class Vehicles despite prior knowledge that the vehicles were subject to the Oscillation Defect. (Complaint, ¶¶ 33-35.) As damages in Count III, Plaintiffs seek

actual damages; trebled pursuant to 73 P.S. § 201-9.2(a);

costs, interest and attorneys fees pursuant to 73 P.S. § 201-9.2(a); and

such other relief as this Court deems appropriate.

(Complaint at 11.)

On February 2, 2009, Defendant filed a timely motion for removal pursuant to 28 U.S.C. §§ 1332(d) and 1146, arguing that removal was appropriate under the Class Action Fairness Act of 2005 ("CAFA") inasmuch as Plaintiffs had alleged a putative class with over 100 members, an amount in controversy exceeding $5,000,000.00, and diversity of at least one member of the class and any

4

defendant.  Ford then moved to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs filed a motion to remand to the Court of Common Pleas on February 14, 2009.  In the brief in support of the motion, they argue Ford has failed to show by a preponderance of the evidence that this Court has subject matter jurisdiction under CAFA.  (*See* Plaintiffs' Memorandum of Law in Support of Their Motion to Remand, Doc. No. 6, "Plfs.' Remand Memo.")  Defendant argues, to the contrary, that it has presented evidence to support its contention that the three criteria of CAFA have been met. (Defendant's Memorandum in Opposition to the Motion to Remand, Doc. No. 10, "Def.'s Opp. Memo.")

Because this Court cannot address the Motion to Dismiss if it does not have subject matter jurisdiction question, we begin our analysis with Plaintiffs' Motion to Remand.

## II.  **PLAINTIFFS' MOTION TO REMAND**

Unless expressly precluded by an Act of Congress, a civil action may be removed from state court to the federal district court for the district and division embracing the place where such action is pending, if that court would have had original jurisdiction over the claims.  28 U.S.C. § 1441(a). However, if the district court lacks subject matter jurisdiction over the claims, the case must be  remanded to state court.  *See* 28 U.S.C. § 1447(c) stating, "If at any time before final judgment it appears that the

5

district court lacks subject matter jurisdiction, the case *shall be* remanded." (Emphasis added.)

Pursuant to CAFA,

a federal district court has original jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

28 U.S.C. § 1332(d)(2).

This provision, however, does not apply to any class action in which the total number of class members is less than 100. 28 U.S.C. § 1332(d)(5)(B). In determining the amount in controversy under 28 U.S.C. § 1332(d)(2), the claims of the individual class members are to be aggregated. 28 U.S.C. § 1332(d)(6).

Although CAFA itself is silent on the question, the United States Court of Appeals for the Third Circuit has determined that, as in ordinary removal cases, the burden of proof in establishing federal jurisdiction pursuant to CAFA is on the party seeking removal. Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006); *see also* Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007), *citing* Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004) ("the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.") This includes the burden of establishing that all three criteria of CAFA are met, i.e., diversity of citizenship, a minimal amount in

6

controversy of $5,000,000, and a class size of at least 100 members. Federico, id., *citing* Morgan, id.

"Generally speaking, the nature of plaintiffs' claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands at the time the petition for removal is filed." Westmoreland Hospital Asso. v. Blue Cross of Western Pennsylvania, 605 F.2d 119, 123 (3d Cir. 1979). However, this court may engage in factual analysis beyond the pleadings to determine if it has subject matter jurisdiction. Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 512 (E.D. Pa. 2007).

A. The Parties' Arguments For and
Against Federal Jurisdiction under CAFA

According to Defendant, the three criteria for federal jurisdiction under CAFA are clearly met. That is, the putative class representatives here both allege to be citizens of the Commonwealth of Pennsylvania while Defendant is incorporated in the State of Delaware with a principle place of business in the State of Michigan; thus the diversity criterion is satisfied.[2] *See* 28 U.S.C. § 1332(d)(2)(A). Ford further argues that the number of Class Members and the amount in controversy criteria are met based on the number of Class Vehicles sold in Pennsylvania and the cost of replacing the defective front-end suspension for those vehicles,

---

[2] Plaintiffs do not dispute Ford's argument that the diversity requirement is satisfied; therefore the Court will not address this prong of CAFA.

7

punitive damages, and attorneys fees, all of which are demanded by Plaintiffs in their Complaint. Moreover, none of the exceptions divesting this Court of jurisdiction under CAFA apply in this case.[3] Since the jurisdiction of this Court extends to the county and court in which Plaintiffs originally filed their complaint, removal here is appropriate pursuant to 28 U.S.C. § 1441(a).

In support of its position, Defendant provides a declaration of Eric L. Kalis, a Design Analysis Engineer with Ford Motor Company since May 1993. (Doc. No. 10-5, "Kalis Decl.") Mr. Kalis asserts that Ford sold "about 21,836" F-250 and F-350 vehicles manufactured in Model Years 2005 through 2007 to independent dealerships in Pennsylvania and that "significant replacement" of the allegedly defective front-end suspension components could not be completed "for less than $250 per vehicle." (Kalis Decl., ¶¶ 7 and 9.) Ford argues that based on this information, it has established a potential class membership which would far exceed 100; moreover, damages from violation of the Magnuson-Moss Act would exceed $7 million and from violation of the Consumer Protection Law would exceed $21 million. (Def.'s Opp. Memo at 4.)[4]

---

[3] Plaintiffs do not address this argument in their brief; therefore, the Court concludes they do not rely on any of the exceptions to federal jurisdiction set forth in 28 U.S.C. § 1332(d)(4).

[4] Although Defendant offers arguments to support these amounts, we conclude we need not consider those alternatives because it is clear that the more straightforward analysis discussed by the Court below results in an amount-in-controversy which exceeds the CAFA jurisdictional threshold.

Plaintiff argues that Ford's "conclusory allegations" about the number of Class Vehicles and the total amount of damages "fall woefully short" of the requirements necessary to establish this Court's jurisdiction. They contend that because they have made only general statements regarding the types of relief sought, the class definition, and the number of Class Members, the Complaint is "of absolutely no help in determining jurisdiction." (Plfs.' Remand Memo at 3.) Although Defendant has relied on the fact that almost 22,000 vehicles were shipped to dealers in Pennsylvania, Ford has provided no evidence that at least 100 of those vehicles were sold to Pennsylvania consumers. Second, Ford's argument that "significant replacement" of the suspension would cost at least $250 is a "random number" which "appears to be pulled from thin air." (Id. at 6.) In order for this Court to establish subject matter jurisdiction based on this evidence alone, the Court would have to engage in "unadulterated speculation." (Id. at 7-8.) Therefore, Defendant has not carried its burden of proof in establishing federal jurisdiction, and the case should be remanded to state court.

## B. Applicable Law

Before discussing the size of the putative class and the amount in controversy, it is important to identify the proper standard of proof to be applied where a defendant removes to federal court a class-action complaint originally filed in state

9

court and the plaintiff counters with a motion to remand. Prior to
the Court of Appeals' decision in Frederico in November 2007,
district courts followed one of two lines of cases in determining
if the case should be remanded: Morgan v. Gay, *supra*, and Samuel-
Bassett v. Kia Motors America, Inc., *supra*. The concepts of
"legally certain," "preponderance of the evidence," and which party
had the burden of proof were applied by the district courts of this
Circuit in a manner that was admittedly confusing and
inconsistent.[5] *See* Samuel-Bassett, 357 F.3d at 396, remarking that
courts in the Third Circuit have been "unencumbered by consistency"
in ascertaining the defendant's burden of proof on a motion to
remand (internal quotation omitted.) Recognizing these
inconsistencies, the Third Circuit Court of Appeals provided the
following clarification in Frederico.

In the earlier of the two cases, Samuel-Bassett, the Court had
applied the premise articulated in two Supreme Court cases where
the question of jurisdiction revolved around the amount in
controversy, St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S.
283 (1938), and McNutt v. General Motors Acceptance Corp., 298 U.S.
178 (1936). In Red Cab, the Supreme Court, noting that when a case
is brought in federal court, "the sum claimed by the plaintiff

---

[5] Since the positions of the parties and the evidence are
clearly articulated in this case, we need not revisit the winding
avenues district courts followed in trying to reconcile the questions
raised in Samuel-Bassett and Morgan. Our sister court in the District
of New Jersey has more than adequately summarized this case law in
Raspa v. Home Depot, 533 F. Supp.2d 514 (D. N.J. 2007) (Greenaway, J.)

10

controls if the claim is apparently made in good faith" and the case will be dismissed (or remanded) only if, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." Id. at 288-289. In McNutt, the Court held that "the court may . . . insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." Id. at 189. Applying these two cases, the Court of Appeals in Samuel-Bassett concluded that in such cases, the defendant must "show to a legal certainty that the amount in controversy exceeds the statutory minimum." 357 F.3d at 398.

Subsequently, the Court of Appeals re-visited this question in the context of Morgan v. Gay, a CAFA case in which the plaintiff had specifically alleged in his state-court complaint that the amount in controversy was less than $5 million. When the defendant removed the case to federal court, the district court remanded it, and the defendant appealed. The Court of Appeals, recognizing that a plaintiff is "master of his own claim" and "may limit [his] claims to avoid federal subject matter jurisdiction," concluded that in such a case, "[t]he party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty

11

that the amount in controversy *exceeds* the statutory threshold."
Morgan, 471 F.3d at 474 (emphasis added.) This is the inverse of
the test applied in Samuel-Bassett where the opponent of federal
jurisdiction has to prove to a legal certainty, that the amount in
controversy *could not* exceed the statutory threshold.

Frederico succinctly and clearly distinguished these two
situations:

> According to Frederico, Morgan applies to cases in which
> the complaint specifically avers that the amount sought
> is less than the jurisdictional minimum. There, a
> defendant seeking removal must prove to a legal certainty
> that the plaintiff can recover the jurisdictional amount.
> Conversely, Samuel-Bassett applies to cases in which the
> plaintiff has not specifically averred in the complaint
> that the amount in controversy is less than the
> jurisdictional minimum. There, the case must be remanded
> if it appears to a legal certainty that the plaintiff
> cannot recover the jurisdictional amount.

Raspa v. Home Depot, 533 F. Supp.2d 5143, 521-522 (D. N.J. 2007).

As Plaintiffs point out and Defendant concedes, the Complaint
is completely silent on the question of the number of Class Members
and the amount in controversy; that is, unlike the plaintiff in
Morgan, they have not limited the amount in controversy in an
effort to avoid federal court jurisdiction. Therefore, this case
does not fall into the scope of Morgan, but rather Samuel-Bassett.
Consequently, this case will be remanded unless the Court is
convinced to a legal certainty that Plaintiffs cannot recover at
least $5 million and the Class Members total at least 100.

In order to meet this standard, the defendant must "justify

12

[its] allegations by a preponderance of the evidence." Frederico, 507 F.3d at 197, *citing* McNutt, 298 U.S. at 189. The preponderance of the evidence standard means "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the statutory minium]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); Frederico, 507 F.3d at 196, defining "preponderance of evidence" to mean "proof to a reasonable probability that jurisdiction exists."

At this juncture, the Court may take into account the type of evidence which could properly be considered in addressing a motion for summary judgment. Evans v. Yum Brands, 326 F. Supp.2d 214, 220 (D. N.H. 2004), *citing* Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995) ("In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal"); *see also* Russ v. Unum Life Ins. Co., 442 F. Supp.2d 193, 197 (D. N.J. 2006) (where the complaint fails to allege a specific amount of damages, "the Court must perform an independent appraisal of the value of the claim by looking at the petition for removal and any other relevant evidence.") This evidence includes submissions related to the plaintiff's motion to remand as well as those provided with the defendant's removal notice. *See* USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 205 n. 12 (3d Cir. 2003), noting that "liberal" standards

13

apply in determining if the necessary amount in controversy has been met. On the other hand, the defendant cannot rely on "tenuous inferences and assumptions about the amount in controversy to satisfy its burden." Puelo v. Whirlpool Corp., CA No. 08-925, 2008 U.S. Dist. LEXIS 15646, *4 (D. N.J. Feb. 29, 2008) (internal quotation omitted.) While the defendant is not obligated to "research, state, and prove the plaintiff's claims for damages," he must present "facts sufficient to establish that Plaintiff would more likely than not recover more than the jurisdictional amount, assuming the failure of Defendant's affirmative defenses." McCraw v. Lyons, 863 F.Supp. 430, 434 (W.D. Ky. 1994).

    C.   Calculation of the Damages

We begin with the determination of the amount it is more likely than not each Class Member could recover if all claims were decided in his or her favor.

As noted above, Plaintiffs allege violation of the express warranty provisions of the Magnuson-Moss Act, the implied warranty provisions of the same Act, and violation of the Pennsylvania Consumer Protection Law. They seek injunctive relief in the form an order requiring Ford "to replace the front suspension of the Class Vehicles . . . and to repair any additional damage to the Class Vehicles free of charge." Plaintiffs also seek compensatory, incidental or consequential damages; restitution of "all moneys wrongfully obtained;" and disgorgement of "all ill-gotten revenues

and/or profits earned or retained as a result of the conduct described herein." Finally, they seek attorneys fees; costs; and pre- and post-judgment interest on any amounts awarded. As damages for Defendant's alleged violation of the Consumer Protection Act, Plaintiffs seek treble actual damages, costs, interest and attorneys fees.

By statute, interest and costs are excluded from the calculation of the jurisdictional amount under CAFA. *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs.") All other damages, including attorneys fees, are included. Frederico, 507 F.3d at 199, *citing* Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997).

As noted above, Defendant has submitted a declaration first asserting that "no significant replacement of the front end suspension components" of the Class Vehicles could be completed for less than $250 each. (Kalis Decl., ¶ 8.) Plaintiffs characterize this figure as being "pulled from thin air," a "random number thrown out by the Defendant," and without foundation. In addition, the $250 figure "fails to identify from who's [sic] point of view that number is derived, i.e., the Plaintiffs or Defendants [sic]." (Plfs.' Remand Memo at 6.) Plaintiffs also hypothesize that this figure was derived by dividing the jurisdictional minimum by the

15

number of vehicles shipped to Pennsylvania.  (Id., n. 17.)
However, they offer no counter-evidence as to their own reasonable
estimate of the cost to replace those components.  Their argument
also fails to take into account their demand for the repair of
additional damage such as that to the steering boxes of the
vehicles, and disgorgement of the profits from the sale or lease of
the Class Vehicles.

Mr. Kalis's declaration is made under penalty of perjury and
based on his personal knowledge.  Contrary to Plaintiffs' argument
that his statement regarding the cost of replacing the front-end
suspension is mere speculation upon which the Court cannot rely in
ascertaining the amount in controversy, other courts have accepted
comparable evidence at this point in the litigation.  *See, e.g.,*
Lorah v. Suntrust Mortg., Inc., CA No. 08-703, 2009 U.S. Dist.
LEXIS 12318, *20-*21 (E.D. Pa. Feb. 18, 2009) (affidavit setting
forth four plausible calculations, each showing that the
jurisdictional threshold was met); Fluke v. CashCall, Inc., CA No.
08-5776, 2009 U.S. Dist. LEXIS 18847, *8-*10 (E.D. Pa. Mar. 10,
2009) (affidavit of defendant's associate general counsel showing
that the amount-in-controversy threshold was met based on the
number of loans extended by defendant and the conditions thereof);
Kaufman v. Am. Express Travel Related Servs. Co., CA No. 07-1707,
2008 U.S. Dist. LEXIS 18129, *7 (N.D. Ill. Mar. 7, 2008) (affidavit
of defendant's vice president of finance as to amount of revenue

16

from purchase fees of gift cards and service fees during relevant period); and <u>Cronk v. Cabot Oil & Gas Corp.</u>, CA No. 08-634, 2008 U.S. Dist. LEXIS 45485, * 6 (M.D. Pa. June 5, 2008) (affidavit of defendant's regional land manager stating, based solely on his knowledge, that the "full value of the object of the litigation exceeds [the jurisdictional amount] exclusive of interests and costs.") Moreover, Mr. Kalis is described as an employee of Ford Motor Company for more than 15 years who holds the position of "Design Analysis Engineer." Plaintiffs do not argue that Mr. Kalis is not competent to estimate the cost of replacing the front-end suspension of a Class Vehicle and they provide no evidence to counter his assertion that the cost of doing so is $250, other than their own speculation that this number was "pulled from thin air." "Merely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient." <u>Amoche v. Guar. Trust Life Ins. Co.</u>, CA No. 08-2094, 2009 U.S. App. LEXIS 2849, *25-*26 (1st Cir. Feb. 13, 2009), *citing* <u>Strawn v. AT&T Mobility LLC</u>, 530 F.3d 293, 299 (4th Cir. 2008) (where plaintiffs "offered nothing" to challenge defendant's affidavit, defendant had established the amount in controversy under CAFA.)

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." <u>Hunt v. Washington State Apple Advertising Comm'n</u>, 432 U.S. 333, 347 (1977); *see also* <u>In re</u>

<u>Corestates Trust Fee Litigation</u>, 39 F.3d 61, 65 (3d Cir. 1994) (the court measures the amount in controversy in claims for injunctive relief by "the value of the right sought to be protected by the equitable relief.")  Here, the ultimate object of the litigation is a vehicle in which the Oscillation Defect and any related damage have been eliminated.  According to Plaintiffs, this can be accomplished by the replacement or repair of the defective front-end suspension and the replacement or repair of other parts of the vehicle which have been damaged by the Oscillation Defect, e.g., the steering boxes.[6]

In light of Ford's assertion that replacement of the front-end suspension alone would cost approximately $250 per vehicle and in the absence of any countervailing evidence from Plaintiffs that such repairs would cost less than that amount, we begin our calculation with that figure.  In addition to such actual damages, Plaintiffs claim treble damages pursuant to the Consumer Protection Law, 73 P.S. § 201-9.2(a).[7]  Where punitive damages are claimed and

_____

[6]  We are not persuaded by Plaintiffs' red herring arguments that some Class Vehicles may not need "significant" repair or that the value of the injunctive relief would be less if measured from their point of view rather than that of Defendant.  Plaintiffs clearly seek an injunction requiring Ford to *replace* the front end suspension and *repair* any additional damages caused to the Class Vehicles, all free of charge to the owner of the vehicle.  *(See* Complaint at 9, ¶ C.)

[7]  (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($

18

are statutorily provided, they must be included in the calculation of the amount in controversy. Frederico, 507 F.3d at 199, *citing* Golden v. Golden, 382 F.3d 348, 356 (3d Cir. 2004)(claims for punitive damages may be aggregated with claims for compensatory damages unless they "patently frivolous and without foundation.") The sum of actual damages and punitive damages is potentially therefore at least $1,000.00 per Class Member.

As Plaintiffs correctly point out, under either the Magnuson-Moss Act or the Consumer Protection Law, a prevailing plaintiff may receive an award of attorneys fees. *See*, respectively, 15 U.S.C. § 2310 and 73 P.S. § 201-9.2(a). These fees are therefore properly considered in the calculation. As the Court pointed out in Frederico, attorneys fees are commonly in the range of 27% to 30% of the direct damages. Frederico, 507 F.3d at 199. Using the higher percentage (as was done in Frederico), an individual Class Member's attorneys fees would equal $300, bringing the total of actual damages, punitive damages, and attorneys fees to $1,300.

If the dollar amount per claim is apparent from the complaint or can be determined from the proffered evidence, "the number of class members will determine the amount in controversy through the operation of simple multiplication." Amoche, CA No. 07-371, 2008

100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees. 73 P.S. § 201-9.2(a). Private Actions.

U.S. Dist. LEXIS 63459, *8-*9 (D. N.H. Aug. 14, 2008)(internal quotation omitted.)  In this case, with each plaintiff receiving damages and fees of $1,300, to reach the jurisdictional threshold of $5,000,000, the class must consist of 3,847 members, significantly greater than the 100-member class required under CAFA.  We turn, therefore, to consideration of the class size.

D.  Calculation of the Class Size

"Courts will ordinarily discharge the prerequisite of numerosity if the class is so large that 'joinder of all members is impracticable.'"  McGee v. Cont'l Tire N. Am., Inc., CA No. 06-6234, 2009 U.S. Dist. LEXIS 17199, *24 (D. N.J. Mar. 4, 2009), citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Although Plaintiffs have not proposed a number of Class Members, they do allege that "[b]ased on Ford Motor Company internal documents, and reports to [the] National Highway Transportation Safety Administration the class is believed so numerous that joinder of all members in one action is impracticable."  (Complaint, ¶ 16.)

Through the Kalis Declaration, Defendant asserts that "about 21,836" Ford F-250 and F-350 vehicles in Model Years 2005, 2006, and 2007 were "sold. . .to independent dealerships located in Pennsylvania."  Plaintiffs argue that the number of vehicles sold to dealerships is not the issue, but rather how many vehicles were ultimately delivered to consumers in Pennsylvania and that the

20

number proffered by Defendant bears no relationship to the number of potential Class Members. Therefore, the case should be remanded because this Court cannot use a speculative number to derive the total amount in controversy. (Plfs.' Remand Memo at 5.)

We find that Plaintiffs' imprecise drafting of the Complaint has opened them to a much broader potential class than a mere 22,000 members. In their memorandum in support of their motion to remand, Plaintiffs state that the class definition is limited to "all persons who purchased class vehicles in the State of Pennsylvania." (Plfs.' Remand Memo at 3.) However, in the Complaint, Plaintiffs first define the Class as all "persons and entities in the State of Pennsylvania who currently own or lease 2005-2007 Ford F-250 or F-350 vehicles manufactured by Ford Motor Company." (Complaint, ¶ 3.) The Class also includes all "persons and entities in the State of Pennsylvania . . . who owned such a vehicle and were forced to sell or trade the vehicle at a loss because of the extreme front end oscillation the vehicles exhibit." (Complaint, ¶ 3.) Elsewhere, the Class is defined as "all persons who purchased a class vehicle in the State of Pennsylvania or who owned a class vehicle and were forced to sell or trade the vehicle at a loss because of the extreme front end oscillation the vehicles exhibit." (Complaint, ¶ 14.) That is, the first definition simply

requires the person[8] who owns or leases the Class Vehicle to be
"in" Pennsylvania without requiring that the vehicle was purchased
or leased in the Commonwealth. The second requires no current
ownership of a Class Vehicle, excludes lessees, and does not
require the owner to have purchased the defective vehicle in
Pennsylvania. The third requires that the Class Vehicle was
purchased in Pennsylvania, but not that the owner be a Pennsylvania
resident, and again excludes lessees. By way of example, under the
first definition, a person who purchased or leased a vehicle in
Florida, then moved to and currently lives in Pennsylvania is
considered a Class Member. Under the second, a Florida resident
who bought his Class Vehicle there, sold it at a loss, then moved
to Pennsylvania, would be a Class Member, as would a resident of
Florida who purchased a Class Vehicle in Pennsylvania, returned to

---

[8] The distinction between "persons" and "entities" is
significant for claims brought under either the Magnuson-Moss Act or
under the Pennsylvania Consumer Protection Law, both of which limit
coverage to persons but not businesses. The Magnuson Moss Act defines
"consumer product" as "any tangible personal property which is
distributed in commerce and which is normally used for personal,
family, or household purposes" and "consumer" as "a buyer (other than
for purposes of resale) of any consumer product, any person to whom
such product is transferred during the duration of an implied or
written warranty (or service contract) applicable to the product, and
any other person who is entitled by the terms of such warranty (or
service contract) or under applicable State law to enforce against the
warrantor (or service contractor) the obligations of the warranty (or
service contract)." *See* 15 U.S.C. §§ 2301(1) and (3), respectively.
The Consumer Protection Law similarly limits its coverage to "persons"
who purchase or lease goods or services "primarily for personal,
family or household purposes." 73 P.S. § 201-9.2. *See* discussion of
the distinctions between an item purchased for personal, family or
household purposes and purchase of the same item for business purposes
in Novinger Group, Inc. v. Hartford Ins., Inc., 514 F. Supp.2d 662,
670 (M.D. Pa. 2007)

22

Florida, and sold his vehicle there at a loss under the third definition.

Setting aside all definitions except that which Plaintiffs now contend is the accurate definition, i.e., "all persons who purchased class vehicles in the State of Pennsylvania," based on Defendant's assertion that some 22,000 Class Vehicles were shipped into Pennsylvania, it is not rash speculation on the part of the Court to conclude that it is more likely than not that 3,847 of the 21,836 vehicles (one in six) *shipped* to Pennsylvania were *purchased* by individuals (as opposed to businesses) in Pennsylvania. This likelihood is heightened by Plaintiffs' allegation that *all* Ford F-250 and F-350 vehicles manufactured in Model Years 2005, 2006 and 2007 "are uniformly and inherently defective in materials, design or workmanship and exhibit the severe front end oscillation under ordinary driving conditions." (Complaint, ¶ 4.) That is, given Plaintiffs' allegations in the Complaint and Defendant's evidence regarding the number of vehicles in question, we conclude it is more likely than not that there are at least 3,847 members in the putative class.

Based on this analysis, we conclude Defendant has shown there is a "reasonable probability" that should Plaintiffs succeed on all claims, they would be awarded damages of at least $5 million. Therefore, subject matter jurisdiction has been established under CAFA and the case need not be remanded.

23

## III. DEFENDANT'S MOTION TO DISMISS

Ford has moved to dismiss Plaintiffs' complaint in its entirety for three reasons. First, Plaintiffs' express warranty claim, Count I, does not allege sufficient facts to establish Defendant's failure to comply with that warranty. Second, the implied warranty claim, Count II, does not allege manifestation of the alleged defect within the warranty period. Finally, Plaintiffs have failed to allege breach of a written warranty as required by the Consumer Protection Law. (Motion to Dismiss at 1.) Plaintiffs contend that although they may not have used certain "magic words" in their Complaint, their warranty claims are sufficiently clear as to survive a motion to dismiss, that is, they have made the short, plain statement putting the defendant on notice of the claim as required by Rule 8 of the Federal Rules of Civil Procedure. (Plaintiffs' Memorandum of Law in Opposition to the Defendant's Motion to Dismiss, Doc. No. 9, at 1-2.)

### A. Standard of Review Under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a defendant moves to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has recently discussed how the Supreme Court modified the standard of review for such motions through its ruling in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also* Phillips v. County

24

of Allegheny, 515 F.3d 224 (3d Cir. 2008).

We first note what has not changed in the wake of Twombly and Phillips. First, Phillips noted the Supreme Court had reaffirmed that Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." Phillips, 515 F.3d at 231, *citing* Twombly, 127 S.Ct. at 1964. Second, the Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, id., *citing* Twombly, id. at 1964-65 and 1969 n.8. Phillips also noted that while the Supreme Court did not address the previously established rule about drawing all reasonable inferences in favor of the plaintiff when considering a motion to dismiss, it concluded "we do not read [the Twombly] decision to undermine that principle." Id. at 231.

At the same time, Twombly "disavowed" the standard which had been used for many years by courts considering motions to dismiss, that is, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Phillips, 515 F.3d at 232, *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and *citing* Twombly, 127 S.Ct. at 1968-69, which describes

that phrase as "an incomplete, negative gloss on an accepted pleading standard." "After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips, 515 F.3d at 233, quoting Twombly, 127 S.Ct. at 1969 n. 8. "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. at 234, quoting Twombly, 127 S.Ct. at 1965. In short, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," that is, "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 322 (3d Cir. 2008), citing Phillips, 515 F.3d at 234, and Twombly, 127 S.Ct. at 1965.

B.    Motion to Dismiss Count I

Defendant argues that Count I of the Complaint, the alleged breach of the express warranty provisions of the Magnuson Moss Act, must be dismissed because Plaintiffs fail to allege facts sufficient to establish that Ford did not comply with that warranty.    Ford argues that its warranty, Exhibit B to the Complaint ("the Warranty"), is a "repair or replace" warranty limited both by time and mileage.    To establish breach of such a

26

warranty, Plaintiffs must prove (1) a covered defect existed; (2) notice of the defect was given within a reasonable time after it was or should have been discovered; and (3) the warrantor was unable to repair the defect after a reasonable time or a reasonable number of attempts. (Defendant's Memorandum of Law in Support of Motion to Dismiss, Doc. No. 4-2, "Def.'s Memo," at 4-5.) Specifically, Ford argues that Plaintiffs have failed to allege (1) that the Oscillation Defect occurred within the 36-month period or 36,000 miles following purchase, which ever comes first ("the Warranty Period"); (2) that the front-end suspension on a particular vehicle was subject to the Oscillation Defect during the warranty period; (3) that they took their vehicles to Ford dealers for repair during the Warranty Period; or (4) that the dealers failed in fact to repair the vehicles. (Def.'s Memo at 5-7.)

In determining if a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted, the court may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based on those documents. Pension Guaranty Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1992). We agree that Plaintiffs may not have explicitly alleged in their Complaint that they owned Class Vehicles, that they presented the vehicles for repair during the Warranty Period, and that the dealer failed to repair the vehicles. However, an attachment to Plaintiffs'

Complaint makes clear that Plaintiff Timothy F. Lewis Sr. of Glenolden, Pennsylvania, presented a Ford F-350, model year 2006, to Springfield Ford, Inc., in Springfield, Pennsylvania, on December 18, 2008. (*See* Complaint, Exhibit C.) Mr. Lewis complained that while driving at highway speed, he hit a bump and the vehicle "started shaking violently." The instructions to the repair department included:

> Road test to verify concern - check suspension. Tight road force [sic] balance tires and road test - contact Ford hotline, follow instructions and replace steering damage and install shims and align suspension - reset tire pressures and road test.

There is no question the vehicle was still under warranty on December 18, 2008, because there was no charge for replacement parts or labor, the former being marked "warranty" in the column headed "unit price." There is also a handwritten note indicating that there had been "no absolute resolution of problem." (Exhibit C.) This evidence is consistent with the allegations of the Complaint even though these specifics might not have been alleged within the body of the Complaint itself.

A proper complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, a complaint "need not plead law or match facts to every element of a legal theory." Weston v. Pennsylvania, 251 F.3d 420, 429 (3d Cir. 2001), *quoting* Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000). Plaintiffs

have alleged that they currently own or lease 2005-2007 Ford F-250 or F-350 vehicles; that they have experienced the Oscillation Defect; that the Oscillation Defect was present when the vehicles left Ford's possession, and that Defendant has been put on notice of the defect but has chosen to ignore the problem, despite knowledge that the vehicles are unsafe. Exhibit C indicates that this notice was given within the Warranty Period. Despite the absence of a specific allegation regarding Ford's inability or refusal to repair the defect within a reasonable time, we find the other allegations sufficient to withstand Defendant's motion to dismiss, inasmuch as Plaintiffs allege "facts suggestive of [the proscribed] conduct." Phillips, 515 F.3d at 233.

## C. Motion to Dismiss Count II

Similarly, Defendant argues that Count II, the implied warranty claim, must be dismissed because Plaintiffs do not allege manifestation of the alleged defect within the Warranty Period. Ford agrees that the duration of the implied warranty is the same as the duration of the express warranty. (Def.'s Memo at 8.) As discussed in the previous section, Exhibit C supports the conclusion that Mr. Lewis presented his vehicle for repair of the Oscillation Defect while it was still under warranty. Thus, we again conclude that Plaintiffs' implied warranty claim is sufficiently alleged to withstand the motion to dismiss.

D.    Motion to Dismiss Count III

Defendant's only argument with regard to Plaintiffs' claim for breach of the Consumer Protection Law, specifically Section 201-2(4)(xiv), is that such a claim is applicable only to written express warranties, not implied warranties. Because Plaintiffs' have failed to state a claim under Count I, Count III must fail as well. (Def.'s Memo at 9-10.)

Since we have concluded that Plaintiffs sufficiently alleged violation of the express warranty given by Ford to purchasers of the Class Vehicles, we also conclude that their claims for violation of the Consumer Protection Law's provisions related to breach of express warranties must survive the Motion to Dismiss.

Defendant's Motion is therefore denied in its entirety, but without prejudice.

An appropriate Order denying Plaintiffs' Motion to Remand, Docket No. 5, and Defendant's Motion to Dismiss, Docket No. 4, is attached hereto.

March _9̶ 6̶_, 2009                    _William L. Standish_
                                      William L. Standish
                                      United States District Judge

30