IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY LEWIS and TIMOTHY TRAPUZZANO )
  on behalf of themselves and all      )
  others in the State of               )
  Pennsylvania similarly situated,     )
                                       )
      Plaintiffs,                      )
                                       )
          vs.                          )        CA No. 09-164
                                       )
FORD MOTOR COMPANY,                    )
                                       )
      Defendant.                       )

**MEMORANDUM OPINION**

Pending before the Court is Plaintiffs' Motion to Exclude the
Defendant's Expert and Expert Report, Doc. No. 46. Plaintiffs
argue that the report of Paul Taylor, Ph.D., provided by Defendant
with its Brief in Opposition to Plaintiffs' now-pending motion for
class certification, should be excluded for three reasons: (1) the
expert report is not relevant to any issue concerning
certification, (2) Dr. Taylor is not qualified to testify
concerning certification issues, and (3) the expert report is not
a product of reliable testing. For the reasons stated below,
Plaintiffs' motion is denied.

A.    Admission of Expert Report or Testimony

In a class certification analysis, the district court must
"consider all relevant evidence and arguments," including expert
testimony offered by either party. In re Hydrogen Peroxide

1

Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008). However, an expert report submitted in support of a pleading prior to trial may be excluded for any number of reasons identified pursuant to Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), and Federal Rule of Evidence 702.[1] The United States Court of Appeals for the Third Circuit has concluded that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (internal citation omitted.) In determining "reliability," the court should consider:

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Pineda, id. at 247-248, *citing* Daubert and In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742, n.8 (3d Cir. 1994).

These reliability factors, however, do not apply to every expert or in every case, nor do they need to be weighed equally. Rather, they are to be used to "guide the judge's determination of

---

[1] "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

the admissibility of evidence." United States v. Williams, No. 04-
4267, 2007 U.S. App. LEXIS 13429, *7 (3d Cir. June 7, 2007), citing
Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). For
instance, a report may be excluded if the expert has not considered
alternative causes for the result about which he opines or if he
has not conducted an inquiry and actual investigation, as opposed
to relying solely on what he has been told by others. United
States v. Fleet Mgmt., No. 08-2600, 2009 U.S. App. LEXIS 11465, *9-
*10 (3d Cir. May 28, 2009). A report may also be excluded if the
opinion is based on assumptions which lack a factual foundation
(Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 413-414 (3d
Cir. 2002)), or if the conclusions are based on sheer speculation
or conjecture (State Farm Fire & Cas. Co. v. Holmes Prods., CA No.
04-4532, 2006 U.S. App. LEXIS 2370, *9-*12 (3d Cir. Jan. 31,
2006).) A district court's decision to exclude or admit an expert
report is a matter within its sound discretion. See In re TMI
Litig., 193 F.3d 613, 666 (3d Cir. 1999) ("An abuse of discretion
arises when the District Court's decision rests upon a clearly
erroneous finding of fact, an errant conclusion of law or an
improper application of law to fact.") (Internal quotation marks
omitted.) The Federal Rules of Evidence, e.g., Rules 401 and 702,
support "a liberal policy of admissibility." Pineda, 520 F.3d at
243. Even if the evidence is of questionable reliability, it
should be admitted if it is "sufficiently reliable to help the

3

trier of fact." Williams, 2007 U.S. App. LEXIS 13429 at *8.

It is clear that either party may submit an expert report in support of its position on class certification questions and where both parties have done so, the court must undertake a rigorous analysis of those reports, not merely accept them at face value. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 323. "Weighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands." Id., internal citation omitted. Here, Plaintiffs have not offered any form of expert testimony, so the Court has only Dr. Taylor's report to consider. The fact that there is no opposing report does not mean, however, that the court is to automatically adopt his arguments. Id.

With these guidelines in mind, we turn to Dr. Taylor's report.

B.    Summary of Dr. Taylor's Credentials[2]

Dr. Paul Taylor is a Principal Engineer with Exponent Failure Analysis Associates, located in Menlo Park, California. He specializes in "the investigation and analysis of products and systems in the consumer, transportation, and industrial environments" and he "regularly performs analyses of warranty and accident databases during his evaluations of the real world performance of products, particularly in automotive applications."

_____

[2] Unless otherwise noted, the information in this section is taken from Appendix A to Dr. Taylor's Report, Exhibit 2 to Defendant's brief in opposition to the motion for class certification.

He holds a bachelor's degree from Rensselaer Polytechnic Institute as well as master's and doctoral's degrees from Stanford University, all in mechanical engineering. He is a registered professional mechanical engineer in California and has undergone at least two OSHA training courses.

## C.   Defendant's Use of Dr. Taylor's Report

Dr. Taylor's report, entitled "Steering Wheel Oscillations in Ford F-Super Duty Trucks and Testing of Named Plaintiffs' Vehicles" ("Taylor Rep."), consists of five documents. The first is the narrative report which addresses causes of steering wheel oscillations and other vibrations; comparisons by the National Highway Traffic Safety Administration ("NHTSA") of such oscillations in vehicles comparable to Ford-250s and F-350s, and the specific findings of an NHTSA investigation into steering shimmy on the Ford Trucks;[3] copies of all Ford service records for the named Plaintiffs' vehicles as well as inspections and test drives performed in connection with this litigation and Dr. Taylor's analysis of those reports; and a summary of his conclusions. (See Doc. 45, Exh. 2.)  The second document, Appendix

---

[3]   For the sake of brevity, the term "Ford Trucks" as used herein refers to Ford-250 and F-350 Super-duty trucks for model years 2005 through 2007, the vehicles to which Plaintiffs refer in the memorandum in support of the motion for class certification.  It should be noted that this definition is slightly different from that of "Class Vehicles" previously used, e.g., in the Memorandum Opinion denying Plaintiffs' motion to remand this matter to the Court of Common Pleas of Armstrong County and denying Defendant's motion to dismiss.  (See Doc. No. 18 at 3.)

A to his report, is Dr. Taylor's *curriculum vitae*, summarized above. Appendix B-1 is an engineering analysis completed in March 2009 which summarizes the NHTSA investigation into reports of "severe front suspension and steering wheel oscillations" experienced by drivers of the Ford Trucks when the vehicles "traveled over an uneven road surface." Appendix B-2 is a copy of Technical Service Bulletin ("TSB") 7-10-10 entitled "Steering Wheel Oscillation," and Appendix B-3 is entitled "Index of Key Features, 2005 F-250/F350 Super Duty Pickups," a brochure apparently intended as a marketing tool for Ford dealers.

Ford Motor Company engaged Dr. Taylor to provide a report summarizing several engineering aspects of the Ford-250 and Ford-350 vehicles, some of which are purportedly owned by the individuals belonging to the class proposed for certification. For instance, Dr. Taylor's report is cited in Defendant's brief in opposition to the motion for certification (Doc. No. 45, "Def.'s Brief") as the source of information about the structure of the F-250 front axle and the types of engines available on that vehicle;[4]

_____

[4] "The F-250 is sold with either four-wheel drive (4x4) or rear-wheel drive (4x2); only the 4x4 models have a solid front axle. . . the vehicle is available with either a gasoline or a diesel engine." (Def.'s Brief at 2, citing Taylor Rep. at 1, 10, 15-18.) The F-350 comes in similar configurations even though they have some differences, e.g., the F-350 is available with dual rear wheels but the F-250 is not. (Def.'s Brief at 4, citing Taylor Rep. at 15, 17, 33-34.)

the type of vehicle owned by each of the named Plaintiffs;[5] and the type of service each vehicle underwent after Mr. Trapuzzano or Mr. Lewis experienced steering wheel oscillation.[6]   Dr. Taylor also opined about the general characteristics of vehicles;[7] provided descriptions of various types of vehicle vibration and analyzed the reports by Mr. Lewis and Mr. Trapuzzano vis-a-vis those descriptions;[8] and summarized the findings of the NHTSA with regard to reports of shimmy in other manufacturers' vehicles as well as

[5] "Trapuzzano's truck was a [2005 F-250] 4x4 with a gasoline engine." (Def.'s Brief at 2, citing Taylor Rep. at 27.)   Mr. Lewis's truck was a 2006 F-350 4x4.   In general, the F-350 models have a greater payload than the F-250s and, if properly equipped, can tow greater weights.   (Def.'s Brief at 4, citing Taylor Rep., Appendix B-3 at 33-34 and 18.)

[6] With regard to Mr. Trapuzzano's vehicle, the "dealer checked the tire pressure and the steering damper and torqued the suspension components." (Def.'s Brief at 3, citing Taylor Rep. at 28.)   After Mr. Trapuzzano returned to the dealer a second time because he thought the problem may have been recurring, "the dealer determined that he was experiencing vibration because his aftermarket tires were substantially under-inflated, were unbalanced, and were oblong and had flat spots on them."   (Id.)   With regard to Mr. Lewis's truck, the dealer "reset the tire pressure, replaced the steering damper, installed shims and aligned the suspension."   (Def.'s Brief at 5, citing Taylor Report at 25-26.)

[7] For example, the facts that some amount of vibration is "normally present;" that Class Vehicles are "not optimized" for driving without a heavy load; and that oscillation or vibration may arise from many sources.   (Def.'s Brief at 6, citing Taylor Rep. at 7 and 4.)

[8] Mr. Lewis's description was consistent with "shimmy" which is associated with solid front axle suspensions, but vehicles with 4x2 suspensions which do not have a solid front axle cannot experience shimmy.   (Def.'s Brief at 6, citing Taylor Rep., passim.)   Dr. Taylor found Mr. Trapuzzano's vibration inconsistent with the definition of "shimmy" and suggested several alternative causes to which it could be attributed.   (Def.'s Brief at 7-8, citing Taylor Rep. at 28-29, 7-9.)

Ford vehicles, including the causes of those vibrations.⁹  He further explained how service technicians use the Technical Service Bulletins prepared by the manufacturers to diagnose and resolve customer concerns.  In particular, he considered TSB 07-10-10, published in May 2007, which addresses the fact that some 2005-2007 F-Super Duty vehicles "may exhibit steering wheel oscillation (back and forth motion) immediately following front or rear wheel impacts (i.e., with pavement joints, frost heaves, rough roads, etc.)" (Def.'s Brief at 8, *citing* Taylor Rep. at 11-12 and Appendix B-2.)

With regard to the issues before the Court in considering the motion for class certification, Dr. Taylor's report is the source for statistics about the estimated percentage of trucks used in commercial or small business environments as compared to use by "consumers."¹⁰  (Def.'s Brief at 18-19, *citing* Taylor Rep., Appendix B-3.)  It is cited as one basis for Defendant's argument that Plaintiffs have failed to identify a uniform defect about which Ford failed to warn potential buyers, i.e., the "deceptive conduct" which must be shown in a suit relying on Section 201-2(4)(xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* ("CPL.")  That is, the proposed

---

⁹  *See,* generally, Def.'s Brief at 7 and Taylor Rep. at 12-13, 19-20, 14-17.

¹⁰  This point may go to proof of numerosity since only individuals who purchase or lease goods "primarily for personal family or household purposes," as compared to commercial use, are protected under the CPL, 73 P.S. § 201-9.2.

class, according to Dr. Taylor, includes at least 24 distinct types of vehicles, at least some of which cannot possibly experience the type of shimmy reported by Mr. Trappuzano because they do not have a solid front axle.[11]  (Def.'s Brief at 19-20, *citing* Taylor Rep., 17-18.)

## D.  Plaintiffs' Arguments for Exclusion of the Expert Report

The threshold problem here is that Plaintiffs offer no factual evidence to contradict several of Dr. Taylor's conclusions. Instead, they simply argue that his report "has absolutely no relevance to any issue pending before this Court" and that the issues before the Court "are simple and straightforward and do not require expert testimony to resolve." Moreover, an engineer is not qualified to assist in determination of the certification issues now pending.  (Plfs.' Brief at 2-3.)

Plaintiffs' first argument is that while Dr. Taylor's conclusions address the merits of their claims, the report is not relevant to any question regarding certification. Moreover, "it is inappropriate to argue the merits of [a] claim during certification."  (Plfs.' Brief at 7.)  Contrary to Plaintiffs' arguments, the Court of Appeals has made it abundantly clear that

[i]n its sound discretion, a district court may find it

---

[11] Defendant also relies on Dr. Taylor's report to support its argument that the class is too broadly defined because the oscillation is "more evident" in vehicles with gasoline engines than in those with diesel engines and that oscillation complaints are more common in the F-250 than in the F-350.  (Def.'s Brief at 20, *citing* Taylor Rep. at 16-17 and Appendix B-2.)

unnecessary to consider certain expert opinion with
respect to a certification requirement, but it may not
decline to resolve a genuine legal or factual dispute
because of concern for an overlap with the merits.
Genuine disputes with respect to the Rule 23 requirements
must be resolved, after considering all relevant evidence
submitted by the parties. See [West v. Prudential Secs.,
Inc., 282 F.3d 935, 938 (7th Cir. 2002)]    ("Tough
questions must be faced and squarely decided, if
necessary by holding evidentiary hearings and choosing
between competing perspectives.");. . . [Miles v. Merrill
Lynch & Co., 471 F.3d 24, 42 (2d Cir. 2006)](rejecting
the view that "a district judge may not weigh conflicting
evidence and determine the existence of a Rule 23
requirement just because that requirement is identical to
an issue on the merits").

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 324 (other
citations omitted.)

We conclude Dr. Taylor's report is helpful on questions
pertaining to class certification even though he does not directly
opine on these questions. By way of example, Plaintiffs currently
define the class as

All consumers who purchased or leased 2005-2007 F-250/
F-350 Super Duty vehicles new from Ford Motor Company
authorized dealers located in the State of Pennsylvania.

(Plaintiffs' Memorandum of Law in Support of the Plaintiffs [sic]
Motion for Class Certification as to Count III of the Complaint,
Doc. No. 32, "Plfs.' Memo," at 10.)

Dr. Taylor's report addresses two factors relevant to this
definition.   First, with regard to numerosity, Plaintiffs and
Defendant agree that almost 22,000 Ford Trucks were sold in
Pennsylvania.   Dr. Taylor's report indicates that only the four-
wheel drive ("4x4") version of the Ford Trucks have a solid front
axle while the rear-wheel drive ("4x2") models do not.   (Taylor

Rep. at 17-18.)  According to Dr. Taylor, Mr. Lewis's description
of his experience in his Ford 350 was consistent with "shimmy"
associated with solid front axle suspensions.  However, vehicles
with 4x2 suspensions cannot experience shimmy.  Since the class
includes all consumers of all types of Ford Trucks for model years
2005-2007, at least some of them, i.e., the owners of 4x2 models,
cannot experience the shimmy.  Therefore, the class must be smaller
than 22,000.  If numerosity were a hotly contested issue in this
case, Dr. Taylor's opinion on this question could be highly
relevant and persuasive.

    Second, by extension, this factor goes to the question of
commonality.  Since the class is defined as broadly as it is and
since by definition some of the vehicles owned by the class members
cannot have experienced the shimmy, Ford could not have engaged in
deceptive conduct by failing to warn those particular owners of a
defect which did not exist. Therefore, any owner of a Ford Truck
which does not have a solid front axle cannot share a common
question of fact with Plaintiffs, both of whom owned such vehicles.

    Plaintiffs next argue that Dr. Taylor is not qualified to
opine on questions regarding class certification, in particular the
deceptive practices in which Defendant allegedly engaged and who
qualifies as a "consumer" under the CPL.  (Plfs.' Brief at 9.)
This argument is difficult to refute since it is clear Dr. Taylor
is speaking in his report as an engineer, not as an attorney

11

schooled in matter of class actions.  However, having carefully

read Dr. Taylor's entire report, we find only one reference therein

which offers an opinion on class certification issues, that is,

> It is concluded that the proposed class members are not
> a homogeneous group.  Because of the design of their
> vehicles,  some  proposed  class  members  will  never
> experience  the  severe  steering  oscillations  that
> Plaintiffs claim affect all class vehicles.  Depending on
> the  configuration  of  the  vehicle  and  maintenance
> practices,  most  proposed  class  members  will  never
> experience the problem alleged by Plaintiffs.  For other
> proposed class members who experience steering wheel
> oscillations  as  claimed  by  the  named  Plaintiffs,
> returning the vehicle to specification condition would
> correct the cause(s) of the oscillations.

(Taylor Rep. at 2.)

Dr.  Taylor's  conclusions  about  the  proposed  class  are

supported by engineering evidence, e.g., vehicle design, vehicle

configuration, maintenance practices, and the effect of conforming

maintenance practices to those recommended by the manufacturer.

The conclusions go only to the question of whether the class

members share common issues of fact regarding their vehicles.  Had

Plaintiffs' offered a contrary expert report, the Court would be

compelled to weigh both professional opinions in arriving at its

own independent conclusions on these issues.

Dr.  Taylor's  report  does  not  provide  any  insight  into

Defendant's alleged deceptive practices.  In their brief in support

of the motion for class certification, Plaintiffs contend that the

deceptive practices consisted of (1) knowing that class vehicles

exhibited  violent  and  uncontrollable  shaking;  (2)  failing  to

12

acknowledge that divisions within the company had concerns about the design of the class vehicles; (3) despite this knowledge, failing to inform customers of this condition; and (4) trying to conceal the condition and/or blame it on the consumer. (Plfs.' Memo, Doc. No. 32, at 14-15.) The Court's careful review of Dr. Taylor's report reveals no opinions about whether Ford's practices were deceptive, whether there were concerns among Ford personnel before the vehicles were sold, nor whether Ford withheld information from its customers regarding the Oscillation Defect.

To the contrary, Dr. Taylor's report states that TSB 07-10-10, like all such bulletins provided to its service personnel to help them identify, diagnose and remedy customer complaints, was directed at the oscillation problem as early as May 10, 2007, and that earlier versions of that TSB had been supplied as early as 2004. (See Taylor Rep. at 11-12.)

Nor, contrary to Plaintiffs' arguments, do we find any evidence in Dr. Taylor's report of an opinion as to who qualifies as a "consumer" under the CPL. The word "consumer" appears only in connection with complaints in the various NHTSA databases and investigations (see, e.g., Taylor Rep. at 14, 20, 24.) The report does not mention or allude to the Pennsylvania statute in any way.

In short, Plaintiffs' argument that Dr. Taylor is not qualified to opine about deceptive practices and who qualifies as a "consumer" falls short simply because Dr. Taylor offers no such

opinions in his report.

Finally, Plaintiffs' arguments that the expert report must be excluded because it contains no reliable research or ascertainable scientific method similarly fail. The aspects of Dr. Taylor's report to which Plaintiffs object, e.g., the lack of "any true testable hypothesis," the lack of "any true testing" by Dr. Taylor, his failure "to establish the validity of the underlying data for [sic] which he so heavily relies," and the lack of controlled testing of Plaintiffs' vehicles are irrelevant to the question of class certification. His report simply provides background information which will allow the Court to better understand the technical aspects of the Oscillation Defect. In particular, the details of the tests performed on Plaintiffs' vehicles are irrelevant to the question of class certification because at this point, the Court is focused on the putative class and the named Plaintiffs, not the existence, intensity, or any other factor related to the defect itself, with the possible exception of Dr. Taylor's hypotheses regarding other possible causes for shimmy, e.g., under-inflated tires.

We further agree with Defendant that Plaintiffs' objections to the way in which Dr. Taylor tested Plaintiffs vehicles are not persuasive. Stated briefly, after checking to be sure that the tires on each vehicle were inflated according to Ford specifications, Dr. Taylor drove the vehicles over several road

14

types and conditions at varying speeds, attempting to induce shimmy at various points. (Taylor Rep. at 25-29.) However, shimmy could not be induced in either vehicle, leading Dr. Taylor to conclude that consistent with the NHTSA's findings, shimmy does not occur with correct tire pressure. Plaintiffs argue that the test results were not reliable because no details are provided about the test conditions, there was no control group with which to compare the results of the tests on Plaintiffs' vehicles, and thus the test results were neither sound nor objective. (Plfs.' Brief at 11-12.) Again, these tests and their results have nothing to do with class certification issues but do provide assistance to the Court in understanding the mechanics of the alleged Oscillation Defect.

Having considered each of Plaintiffs' arguments to exclude Dr. Taylor's report, we conclude they are without merit. An appropriate order follows.

July __30__, 2009

William L. Standish
United States District Judge

15