IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
TIMOTHY LEWIS and TIMOTHY TRAPUZZANO )
  on behalf of themselves and all    )
  others in the State of             )
  Pennsylvania similarly situated,   )
                                     )
     Plaintiffs,                     )
                                     )
        vs.                          )  CA No. 09-164
                                     )
FORD MOTOR COMPANY,                  )
                                     )
     Defendant.                      )
```

**MEMORANDUM OPINION**

Pending before the Court is a motion by representative plaintiffs Timothy Lewis and Timothy Trapuzzano (collectively, "Plaintiffs"), seeking class certification as to Count III of their Complaint, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* ("CPL" or "Consumer Protection Law.") (Doc. No. 31.)  For the reasons discussed below, the Motion is denied.

**I.  INTRODUCTION**

A.  Factual History[1]

During model years 2005, 2006, and 2007, Defendant manufactured Ford F-250 and Ford F-350 trucks and sold them to consumers in the Commonwealth of Pennsylvania.  According to Plaintiffs, these vehicles are subject to front-end suspension

---

[1] Unless otherwise noted, the facts in this section are taken from the Complaint.

defects which cause severe oscillation under ordinary driving conditions and create a safety hazard for the drivers of the vehicles as well as other motorists. Specifically, the front-end suspension malfunctions, causing the vehicle to shake violently, which in turn causes the driver to lose control. This "Oscillation Defect" also results in premature wear of other parts of the vehicle, including the steering boxes. When the owner of a Model Year 2005-2007 Ford F-250 or Ford F-350 with the Oscillation Defect reported this problem to Defendant's dealers, he or she was told that the problem was an "isolated event," it was the fault of the consumer, or the tires on the vehicle were improperly inflated. However, internal Ford documents acknowledge the existence of the Oscillation Defect and show that Defendant knew the vehicle suspensions were defective before they were sold.

B.    Procedural History

On January 20, 2009, Plaintiffs filed a putative class action suit against Ford in the Court of Common Pleas of Armstrong County, Pennsylvania.    On February 2, 2009, Defendant filed a timely motion for removal pursuant to 28 U.S.C. §§ 1332(d) and 1146, arguing that removal was appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. § 1453, inasmuch as Plaintiffs had alleged a putative class with over 100 members, an amount in controversy exceeding $5,000,000.00, and diversity of at least one member of the class and the Defendant.    Ford then moved to dismiss

2

the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).
(Doc. No. 4.)  Plaintiffs filed a motion to remand (Doc. No. 5) and
the Court denied both pending motions in a Memorandum Opinion dated
March 26, 2009 (Doc. No. 18.)   The matter was then sent to
mediation without success.

On May 11, 2009, Plaintiffs filed the now-pending motion to
certify the class only as to Count III of the Complaint.   The
parties having fully briefed the class action issues, the matter is
now ripe for decision.

## II.  STANDARD OF REVIEW

In order for a class to be certified, the named plaintiff must
establish that all four prerequisites of Federal Rule of Civil
Procedure 23(a) and at least one part of Rule 23(b) are met.  Baby
Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994), *citing* Wetzel v.
Liberty Mutual Ins. Co., 508 F.2d 239 (3d Cir.), *cert. denied*, 421
U.S. 1011 (1975).  Rule 23(a) provides that

> [o]ne or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is
> impracticable,  (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).

These four requirements are referred to, respectively, as
numerosity, commonality, typicality, and adequacy.

3

Assuming the plaintiff satisfies the criteria of Rule 23(a), he must also satisfy the criteria of one of three types of actions that may be maintained on a class basis in Rule 23(b).[2]  Here, Plaintiffs state they are proceeding under Rule 23(b)(3), which provides that a class action may be maintained if:

> (3)   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
>     (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>     (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>     (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>     (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

---

[2]   "A class action may be maintained if Rule 23(a) is satisfied and if: (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(1) and (2).

The requirements of Rule 23(b)(3) are commonly referred to as predominance and superiority. <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 310 (3d Cir. 2008.)

The United States Court of Appeals for the Third Circuit has recently re-evaluated the standard of review to be applied by a district court in considering a motion for class certification. First, the district court must "consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class;" that is, it is no longer sufficient for a party to assure the court that it "intends or plans to meet the requirements." <u>Hydrogen Peroxide</u>, 552 F.3d at 320, 318. Second, the decision to certify a class requires "rigorous consideration of all the evidence and arguments offered by the parties." <u>Id.</u> at 321. This may require the court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits – including disputes touching on elements of the cause of action." <u>Id.</u> at 307. Such factual determinations are made by applying a preponderance of the evidence standard. <u>Id.</u> at 320. Finally, "[w]eighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands." <u>Id.</u> at 323. "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule

23." Id. at 320, *citing* Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008).

In all cases, the party seeking certification bears the burden of demonstrating not only that the proposed class satisfies the four prerequisites of Rule 23(a), but also that the action can be maintained under at least one subsection of Rule 23(b). *See* Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-184 (3d Cir. 2001). Although the plaintiff need not, at this point, conclusively demonstrate the merits of each claim, he must show that each element thereof is "capable of proof at trial through evidence that is common to the class rather than individual to its members." Hydrogen Peroxide, 552 F.3d at 311-312. The Court of Appeals has also rejected a statement made in Chiang v. Veneman, 385 F.3d 256, 262 (3d Cir. 2004), that "in determining whether a class will be certified, the substantive allegations of the complaint must be taken as true." To the contrary, the Court concluded this statement was not supported by any analysis of Rule 23 jurisprudence and contradicted the holdings of Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166, 167 (3d Cir. 2001), and Johnston, earlier cases which established Third Circuit precedent. *See* Hydrogen Peroxide, 552 F.3d at 318, n. 18.[3]

---

[3] In their brief in support of class certification, Plaintiffs acknowledge Hydrogen Peroxide (*see* Plfs.' Memo at 3, n.5), but still assert that "substantive allegations of the complaint should be regarded as true," relying on Slapikas v. First Am. Title Ins. Co., CA No. 06-84, 2008 U.S. Dist. LEXIS 25254, *19-*20 (W.D. Pa. Mar. 24, 2008), and cases from Florida and the Second Circuit. (Plfs.' Memo at

6

In short, this court must determine if each of the requirements of Rule 23 has been met based upon its "rigorous analysis" of the factual and legal allegations in the case. Hydrogen Peroxide, 552 F.3d at 309, *quoting* Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982). For those cases in which there are doubts about whether a class should be certified, the question should be resolved in the movant's favor. *See* Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946 (1985). If certification is granted, the court then appoints class counsel. Fed. R. Civ. P. 23(g)(1).

## III. **ANALYSIS**

### A.   Preliminary Matters

Count III of Plaintiffs' Complaint alleges violation of the Pennsylvania Consumer Protection Law. They allege that they and the other class members are persons who purchased goods or services primarily for personal, household or family use. They further allege that Ford recklessly, wantonly, and willfully violated the CPL by "failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or

3-4 and notes 7 and 8.) In fact, they cite to Hydrogen Peroxide, 552 F.3d, 317-318 (id., n. 7) in this portion of their brief, but ignore the very clear analysis the Court of Appeals provided on this question. They also ignore the fact that Hydrogen Peroxide was handed down on December 30, 2008, i.e., after Slapikas, and the fact that Slapikas relied on Chiang for the principle that substantive allegations should be regarded as true (*see* 2008 U.S. Dist. LEXIS 25254 at *20), a position which was explicitly rejected by the Court of Appeals in Hydrogen Peroxide.

after a contract for the purchase of goods or services." Specifically, Ford is alleged to have ignored the Oscillation Defect; chose to sell the vehicles to an "unsuspecting public" as new and defect free despite its knowledge of the Defect; consequently was unjustly enriched; and "refused to stand behind its product and the warranties it has provided." (Complaint, ¶¶ 33-35.) This language is consistent with 73 P.S. § 201-2(4)(xiv).[4]

Now, however, Plaintiffs have significantly changed the language of Count III. (Plaintiffs' Memorandum of Law in Support of the Plaintiffs [sic] Motion for Class Certification as to Count III of the Complaint, Doc. No. 32, "Plfs.' Memo," at 10.) Instead, in their brief in support of the motion for class certification, Plaintiffs rely on 73 P.S. § 201-2(4)(xxi), the CPL's "catch-all" provision, which defines "unfair methods of competition" or "unfair or deceptive acts or practices" to include "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." This language never appears in the Complaint, thus giving rise to the possibility that Plaintiffs are attempting to improperly amend their complaint through their pleadings. See e.g., Bell v. City of Philadelphia, No. 06-3960, 2008 U.S. App. LEXIS 8896, *6 (3d Cir. Apr. 23, 2008) ("the proper

---

[4] The CPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 P.S. § 201-2(4)(xiv).

8

procedure for plaintiffs to assert a new claim is the amend the complaint in accordance with Fed. R. Civ. P. 15(a).") However, Defendant does not object to this action and, in light of the decision not to certify the class under the current language, the Court will proceed as if a claim under this section of the Consumer Protection Law were included in the Complaint.[5]

We also note as a preliminary matter that, in the Complaint, Plaintiffs defined the class under consideration as "all persons who purchased a class vehicle in the State [sic] of Pennsylvania, or who owned a class vehicle and were forced to sell or trade the vehicle at a loss because of the extreme front end oscillation the vehicles exhibit when contacting typical road surfaces of expansion joints, road reflectors or potholes." (Complaint, ¶ 14.) While this was the formally offered definition, as the Court pointed out in its opinion denying the motion to dismiss, several other versions were bandied about in the Complaint as well. (See Memorandum Opinion, Doc. No. 18, at 21-22.) Now, in the brief in support of the motion for class certification, Plaintiffs offer yet another definition of the class they seek to represent, namely:

> All consumers who purchased or leased 2005-2007 F-250/
> F-350 Super Duty vehicles new from Ford Motor Company
> authorized dealers located in the State of Pennsylvania.

---

[5]    Should Plaintiffs choose to continue this suit on an individual basis, the precise section(s) of the CPL on which they rely must be clarified in an amended complaint. See Order of Court attached hereto.

(Plfs.' Memo at 10.)

While, as Defendant points out, this definition increases rather than diminishes the scope of the class, inasmuch as the motion for class certification will be denied, we need not dwell on this problem. Moreover, it is not necessarily improper for the class to be redefined during the course of litigation. See, e.g., Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993), noting that because such modification is anticipated in Fed. R. Civ. P. 23(c)(1), a court "is not bound by the class definition proposed in the complaint."

Finally, we note that although the Complaint states that Plaintiffs are pursuing class action claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., they do not seek to have a class certified as to either Count I or Count II of the Complaint. Therefore, the Court shall not consider the question of whether a class could justifiably be certified to pursue claims under 15 U.S.C. § 2310(d)(1) or (2) for breach of either an express or an implied warranty.

We turn to each of the criteria under Rule 23(a).

B.    Rule 23(a) Analysis

       1.    Numerosity:    Rather than setting an empirically determinable number, Rule 23(a)(1) states that the number of class members must be sufficiently great that joinder of the members would be "impractical."   The Third Circuit Court of Appeals has

10

recently identified a class of 40 as one which would satisfy the numerosity requirement.   See Stewart v. Abraham, 275 F.3d 220, 226-227 (3d Cir. 2001).

Plaintiffs argue that Defendant has already conceded in its motion seeking to remove the case to this Court that almost 22,000 Class Vehicles[6] were sold to Pennsylvania dealerships and has argued that there are "clearly more than 100 punitive [sic] class members." (Plfs.' Memo at 11.)  Plaintiffs also argue that during discovery, they determined that "at least 1,051 Pennsylvania citizens have complained of the severe and dangerous condition." (Id.; see also Doc. No. 53, warranty records for Class Vehicles serviced in Pennsylvania, "Warranty Records.")     Plaintiffs therefore assert that they have shown by the preponderance of the evidence that the class consists of at least 1,000 individuals and joinder would thus be impracticable.  (Id.)

Although the Warranty Records provided by Plaintiffs show that a total of 1,051 claims were made involving 2005-2007 vehicles with front end vibration, shaking, shimmy, and similar conditions, and that they were taken to Ford dealerships in Pennsylvania for repair, there is no obvious evidence that these vehicles were "purchased. . .new from Ford Motor Company authorized dealers

---

[6] Since Plaintiffs have proffered several definitions of the term "Class Vehicles" in the Complaint and in their brief in support of the motion for class certification, the Court has assumed herein that the term currently is defined as "2005-2007 F-250/F-350 Super Duty vehicles [purchased] new from Ford Motor Company authorized dealers located in the State of Pennsylvania."

located in. . .Pennsylvania," the phrase used in Plaintiffs' current class definition. Although the "selling dealer" is identified by a numeric code, there is no means of readily confirming that those dealers were located in Pennsylvania. There is no evidence to support Plaintiffs' argument that each of the owners who took his or her vehicle to a Pennsylvania dealership was a "Pennsylvania citizen"[7] or that the owner was an individual who had purchased the vehicle primarily for "personal, family or household purposes."[8] Nor is there any reasonable means for the Court identify to how many claims were made involving the same vehicles, but since the claims are organized by vehicle

---

[7] It is well-established that individuals who are not Pennsylvania citizens have no standing to bring suit under the CPL. See, e.g., Stone St. Servs. v. Daniels, CA No. 00-1904, 2000 U.S. Dist. LEXIS 18904, *17 (E.D. Pa. Dec. 29, 2000)(declining to apply Pennsylvania CPL when the plaintiff resided in Kansas because "[s]tate consumer protection laws are designed to protect the residents of the state in which the statutes are promulgated"); Beye v. Horizon Blue Cross Blue Shield, 568 F. Supp.2d 556, 570 (D. N.J. 2008) (same with regard to citizen of New Jersey bringing suit in Pennsylvania under the CPL); but see Mikola v. Penn Lyon Homes, Inc., CA No. 07-612, 2008 U.S. Dist. LEXIS 44201, *9-*11 (M.D. Pa. June 4, 2008) (allowing case by Florida residents to proceed because the contract in question was entered into in Pennsylvania and the object of the suit was a home located in Pennsylvania.) It is not inconceivable that some owners living in adjacent states would bring their vehicles into Pennsylvania if that were the nearest location for service.

[8] The Pennsylvania CPL protects only individuals, not business entities. See, e.g., West Coast Franchising Co. v. WCV Corp., 30 F. Supp.2d 498, 500 (E.D. Pa. 1998), dismissing corporation's counterclaims under the CPL because it did not claim that its franchises were "goods or services primarily for personal, family or household purposes" and thus it did not have standing to bring such a claim; and Novinger Group, Inc. v. Hartford Ins., Inc., 514 F. Supp.2d 662, 670 (M.D. Pa. 2007), dismissing CPL claim because insurance policies in question were purchased for business rather than personal reasons.

identification number, a quick review shows that such is the case. *See*, e.g., Warranty Records, page 4, third and fourth entries; page 5, first and second entries; page 6, first and second entries.

Defendant concedes, in effect, that Plaintiffs have satisfied the numerosity requirement. (Defendant Ford Motor Company's Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Doc. No. 45, "Def.'s Memo," at 1.) Setting aside the question of whether the Warranty Records indicate that there are "at least 1,000 and perhaps as many as 21,836 individuals" who are potential members of the class, as Plaintiffs argue (Plfs.' Memo at 11), the Court concludes that in light of this concession by Defendant, Plaintiffs have established by a preponderance of the evidence, i.e., the Warranty Records, that the potential class is so numerous that joinder would be impracticable and therefore the numerosity requirement is satisfied.

2. *Commonality:* Rule 23(a)(2) requires the plaintiff to establish that he shares at least one question of law or fact with the other members of the class. Johnston, 265 F.3d at 184; Georigi v. Recon Auto. Remanufacturers, CA No. 07-5509, 2009 U.S. Dist. LEXIS 40016, *7 (E.D. Pa. May 8, 2009) (finding commonality requirement satisfied where the defendant's course of conduct was common to all class members and subject to common proof in a single trial.) As the Court of Appeals has pointed out, the commonality requirement "is not a high bar." Chiang, 385 F.3d at 265. Nor

13

does this requirement depend upon the "identity of claims or facts among class members." Johnston, id. Rather, the threshold question is whether the plaintiffs' claims are common, i.e., not in conflict with each other, and/or the plaintiffs allege harm under the same legal theory. Eisenberg, 766 F.2d at 786; Baby Neal, 43 F.3d at 56.

Conversely, "[c]ommonality will not be found where the alleged common issues can only be resolved by making factual determinations that will be different for each class member." Holmes v. Pension Plan of Bethlehem Steel Corp., CA No. 98-1241, 1999 U.S. Dist. LEXIS 10467, *20 (E.D. Pa. June 30, 1999). Where the plaintiffs' "proposed common questions are inherently individualized, requiring inquiry into the particular circumstances" of each plaintiff, courts have declined to certify the proposed class. Holmes, id., quoting Forman v Data Transfer, CA No. 95-3474, 1995 U.S. Dist. LEXIS 14547, *7 (E.D. Pa. Oct. 4, 1995).

Although the concepts of commonality and typicality tend to merge, they are "distinct requirements under Rule 23." Baby Neal, 43 F.3d at 56. "'Commonality' like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff." Id., quoting Weiss v. York Hosp., 745 F.2d 786, 810 (3d Cir. 1984), cert. denied, 470 U.S. 1060 (1985); see also Zeno v. Ford Motor Co., CA No. 05-418, 2006 U.S. Dist. LEXIS 69957, *41 (W.D. Pa.

14

Sept. 27, 2006).

Plaintiffs herein argue that their claims as named representatives and those of the class members are "nearly identical." To prove a violation of the Consumer Protection Law, according to Plaintiffs, they need only establish:

1. each plaintiff is a "consumer" under the Act;

2. there has been deceptive conduct by Defendant; and

3. the plaintiff has suffered an ascertainable loss as a result of that conduct.

(Plfs.' Memo at 12, citing Hansford v. Bank of Am., CA No. 07-4716, 2008 U.S. Dist. LEXIS 65502, *38 (E.D. Pa. Aug. 26, 2008).)

Plaintiffs argue the first of these three elements is met "because the class is limited to consumers who purchased class vehicles."[9] (Id., citing Slapikas v. First Am. Title Ins. Co., CA No. 06-84, 2008 U.S. Dist. LEXIS 25254, *51 (W.D. Pa. Mar. 24, 2008), which found the proposed class satisfied this element because all members had purchased insurance policies from the defendant.) With regard to the claim that the element of deceptive conduct is common to the class and amenable to class treatment, Plaintiffs assert that "the test is wholly objective and does not

---

[9]  Actually, according to Plaintiffs' own current definition of the class, it also includes individuals who leased new Ford-250 or -350 vehicles from Pennsylvania Ford dealerships. (Plfs.' Memo at 10.)  Moreover, as discussed above, the Warranty Records do not show that each person who took his or her vehicle for servicing in Pennsylvania is a "consumer" nor that the vehicles were purchased or leased in Pennsylvania.

require any individual showing.  What must be established is whether the conduct would be deceptive to an ordinary consumer instead of whether it was deceptive to the particular individual." (Plfs.' Memo at 12-13, *citing* <u>Commonwealth v. Manson</u>, 903 A.2d 69, 73-74 (Pa. Commw. Ct. 2003),[10] and <u>Mertz v. Donzi Marine, Inc.</u>, CA No. 04-55, 2007 U.S. Dist. LEXIS 15708, *25-*31 (W.D. Pa. Mar. 6, 2007).[11])  The third element, ascertainable damages, is common to the proposed class members and the named Plaintiffs, they argue, because "whether or not there has been an ascertainable loss of money is a common issue to all class members." (Plfs.' Memo at 13, *citing* <u>Slapikas</u>, 2008 U.S. Dist. LEXIS 25254 at *51.)  Moreover, Plaintiffs contend, while there may be some individual differences

---

[10]  Plaintiffs misinterpret the portion of <u>Manson</u> on which they rely for this principle.  An accurate quotation is: "The question, then is not whether a company or corporate officer engaged in conduct that was intended to deceive consumers.  Rather, the question is whether the company or corporate officer engaged in conduct that might be 'deceptive to the ordinary consumer.'"  <u>Manson</u>, 903 A.2d at 74. The point the court was making had to do with intent on the part of the defendant.  Neither <u>Manson</u> nor the case on which it relied, <u>Commonwealth v. Percudani</u>, 825 A.2d 743, 746 (Pa. Commw. Ct. 2003), distinguished between conduct that was deceptive to an *ordinary consumer* as compared to that which was deceptive to a *particular individual* as Plaintiffs seem to believe.

[11]  <u>Mertz</u> was not a class action case and while the portion of the opinion cited by Plaintiffs does include the language discussed in the previous footnote, the <u>Mertz</u> court did not dwell on this distinction. Having pointed out that a line of cases from the Pennsylvania Commonwealth Court established that a plaintiff bringing suit under the CPL's catch-all provision did not have to prove the elements of common law fraud while case law from the Pennsylvania Superior Court held the opposite, the <u>Mertz</u> court agreed with the Commonwealth Court's conclusion in <u>Manson</u> and <u>Percudani</u>.  <u>Mertz</u>, 2007 U.S. Dist. LEXIS 15708 at *29.  Therefore, Plaintiffs' reliance on <u>Mertz</u> as support for the distinction they make between ordinary consumers and particular individuals is misplaced.

in damages, such discrepancies are not sufficient to defeat class certification inasmuch as trial courts "have wide discretion and multiple tools under. . .Rule 23 to address the issue of remedy when and if the Defendant is found liable." (Id. at 13, *citing* Slapikas, 2008 U.S. Dist. LEXIS 25254 at *54-*57.)

We note initially that the case most heavily relied upon by Plaintiffs to support their arguments, Slapikas, was handed down on March 24, 2008, more than 10 months prior to the Court of Appeals' decision in Hydrogen Peroxide, dated December 30, 2008. It also proceeds the Third Circuit's most relevant case on the questions pertinent to the commonality requirement, that is, Hunt v. United States Tobacco Co., 538 F.3d 217 (3d Cir. 2008), handed down on August 5, 2008. That is not to say that Slapikas has nothing to teach, only that where its relevant analysis diverges from that of Hydrogen Peroxide and Hunt, this Court, of course, must be guided by the latter.

Plaintiffs have not correctly stated the elements to be proven to establish a violation of the Consumer Protection Law because they omit any reference to establishing justifiable reliance by the members of the class on Defendant's statements. The case on which they rely for the elements stated above, Hansford v. Bank of America, relied in turn on Flores v. Shapiro & Kreisman,, 246 F. Supp.2d 427, 432 (E.D. Pa. 2002), and Commonwealth v. Percudani, 825 A.2d 743, 746-747 (Pa. Commw. Ct. 2003.) As the Hansford Court

17

noted in August 2008, following enactment of the catch-all provision of the CPL in 1996, the requirements for pleading "fraudulent or deceptive practices" were "in flux" in Pennsylvania state and federal courts. Based on its conclusion that the CPL was to be liberally construed, the Hansford court followed those cases which allowed a plaintiff to allege deceptive conduct to proceed without alleging or proving providing all the elements of common law fraud.[12] Hansford, 2008 U.S. Dist. LEXIS 65502 at *38-*39.

However, in Hunt, the Court of Appeals concluded that although the language of the catch-all provision itself does not require a plaintiff to show justifiable reliance in addition to the other elements, the portion of the CPL which gives standing to private plaintiffs (as compared to state agency plaintiffs such as the Attorney General) does require the plaintiff to show justifiable reliance on the deceptive conduct. Hunt, 538 F.3d at 221, *citing* 73 P.S. § 201-9.2.[13]    The Court of Appeals stated that the

---

[12] "The traditional elements for proving common law fraud in Pennsylvania are: '(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result.'" In re Partners Group Fin., LLC, 394 B.R. 68, 84, n. 23 (Bankr. E.D. Pa. 2008), *quoting* Colaizzi v. Beck, 895 A.2d 36, 39 (Pa. Super. Ct. 2006).

[13] The private-plaintiff standing provision reads in pertinent part: "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is

18

Pennsylvania Supreme Court

> has categorically and repeatedly stated that, due to the
> causation requirement in the Consumer Protection Law's
> standing provision. . .(permitting suit by private
> plaintiffs who suffer loss "as a result of" the
> defendant's deception), a private plaintiff pursuing a
> claim under the statute must prove justifiable
> reliance. . . .It has not recognized any exceptions, and
> has applied this rule in a variety of situations. . .
> .The Pennsylvania Superior Court has applied the Supreme
> Court's standing rule to the post-1996 catch-all
> provision. . .and our Court has interpreted the rule to
> apply to *all* Consumer Protection Law subsections. . .
> .Given this significant authority on statutory standing,
> we think the Pennsylvania Supreme Court would require
> justifiable reliance where a private plaintiff alleges
> deceptive conduct under the post-1996 catch-all
> provision.

Hunt, 538 F.3d at 221-222 (emphasis in original), *citing* as

examples of Pennsylvania Supreme Court cases on point, Schwartz v.

Rockey, 932 A.2d 885, 897, n.16 (Pa. 2007), and Yocca v. Pittsburgh

Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) (other

citations omitted.)

The Court's decision in Hunt is also consistent with its

earlier decisions on this issue, for instance Huu Nam Tran v.

Metro. Life Ins. Co., 408 F.3d 130, 140 (3d Cir. 2005) (in light of

persuasive decisions by the Pennsylvania Superior Court and Yocca,

"we therefore reject Tran's argument that he is freed from proving

justifiable reliance in connection with his [CPL] claims"), and

greater. The court may, in its discretion, award up to three times
the actual damages sustained, but not less than one hundred dollars
($100), and may provide such additional relief as it deems necessary
or proper. The court may award to the plaintiff, in addition to other
relief provided in this section, costs and reasonable attorney fees."
73 P.S. § 201-9.2(a).

<u>Santana Prods. v. Bobrick Washroom Equip., Inc.</u>, 401 F.3d 123, 136 (3d Cir. 2005) (in <u>Weinberg v. Sun Co., Inc.</u>, 777 A.2d 442, 446 (Pa. 2001), the Pennsylvania Supreme Court "held that a plaintiff bringing an action under the [CPL] must prove the common law fraud elements of reliance and causation.")

Contrary to Plaintiffs' argument that the Pennsylvania Supreme Court would not require the plaintiffs in a class action to show individual reliance, it is hard to imagine how the Court could have been more clear on this point than in its holding in <u>Yocca</u>, that is, "To bring a private cause of action under the [CPL], a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." <u>Yocca</u>, 854 A.2d at 438. With regard to the argument that Pennsylvania district courts have "overwhelmingly chosen" to follow <u>Manson</u> which held - according to Plaintiffs -- that a plaintiff need not plead or prove justifiable reliance, we find that the cases cited in support of this argument (see Plfs. Memo at 8-9, notes 24 and 25) were either decided before <u>Hunt</u> was handed down or within a month thereafter.[14] Following <u>Hunt</u>, other

---

[14] Cases handed down before <u>Hunt</u> include <u>Grimm v. Wash. Mut. Bank</u>, CA No. 08-828, 2008 U.S. Dist. LEXIS 55628 at *15-*18 (W.D. Pa. July 22, 2008); <u>Mertz</u>, 2007 U.S. Dist. LEXIS 15708, *25-*31 (Mar. 6, 2007); <u>Balko v. Carnegie Fin. Group., Inc.</u>, 382 B.R. 717, 723-724 (Bankr. W.D. Pa. Feb, 26, 2008); <u>Figard v. PHH Mortg. Corp.</u>, 382 B.R. 695, 715-716 (Bankr. W.D. Pa. Feb. 26, 2008); <u>Flores</u>, 246 F. Supp.2d at 431-432 (Oct. 29, 2002); and <u>Patterson v. Chrysler Fin. Co.</u>, 263 B.R. 82, 91-93 (Bankr. E.D. Pa. May 24, 2001). Opinions entered shortly after <u>Hunt</u> was handed down include <u>Davis v. Mony Life. Ins. Co.</u>, CA No. 08-938, 2008 U.S. Dist LEXIS 69736, *15-*16 (W.D. Pa.

Pennsylvania district courts have almost uniformly agreed with its conclusion that the Pennsylvania Supreme Court would require evidence of justifiable reliance under the catch-all provision. See, e.g., Lasisi v. Bank of Am., CA No. 08-2523, 2009 U.S. Dist. LEXIS 66209, *10-*11 (E.D. Pa. July 29, 2009) (granting motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in part because plaintiff did not plead misrepresentations, deceptive conduct, or reliance in his complaint); Lombardi v. Allstate Ins. Co., CA No. 08-949, 2009 U.S. Dist. LEXIS 52951, *19-*21 (W.D. Pa. June 23, 2009) (dismissing case because the Court of Appeals in Hunt had "reaffirmed that it is clear under Pennsylvania jurisprudence that a private plaintiff must assert factual allegations demonstrating justifiable reliance"); Siffel v. NFM, Inc., CA No. 07-5152, 2009 U.S. Dist. LEXIS 53052, *3 (E.D. Pa. June 23, 2009); Pearson v. Lasalle Bank, CA No. 08-2306, 2009 U.S. Dist. LEXIS 48904, *13-*14 (E.D. Pa. June 9, 2009); Steffy v. Home Depot, Inc., CA No. 06-2227, 2009 U.S. Dist. LEXIS 27682, *43-*44 (M.D. Pa. Mar. 31, 2009); Molley v. Five Town Chrysler, Inc., CA No. 07-5415, 2009 U.S. Dist. LEXIS 13765, *6-*11 (E.D. Pa. Feb. 20, 2009) (recognizing "uncertainty within the Circuit" regarding the requirements of a claim under the catch-all provision, but declining to dismiss the plaintiffs' CPL claim because they had

---

Sept. 2, 2008) (relying solely on cases decided before Hunt); and Hansford, 2008 U.S. Dist. LEXIS 65502 at *37-*39 (Aug. 26, 2008).

adequately alleged the higher requirements of common law fraud, including reliance on misrepresentations made by the defendant's agent); Morilus v. Countrywide Home Loans, Inc., CA No. 07-900, 2008 U.S. Dist. LEXIS 103556, *41-*43 (E.D. Pa. Dec. 23, 2008); Allen-Wright v. Allstate Ins. Co., CA No. 07-4087, 2008 U.S. Dist. LEXIS 103272, *19-*20 (E.D. Pa. Dec. 19, 2008); Perkins v. State Farm Ins. Co., 589 F. Supp.2d 559, 566-567 and n.4 (M.D. Pa. 2008); and Smith v. John Hancock Ins. Co., CA No. 06-3876, 2008 U.S. Dist. LEXIS 67250, *7 (E. D. Pa. Sept. 4, 2008).[15]

The Complaint does not allege a violation of the "deceptive conduct" provision, section 201-2(4)(xxi) of the Consumer Protection Law, but only section 201-2(4)(xiv) for failure "to comply with the terms of a written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services." There are no allegations that any member of the class justifiably relied on the warranty or on oral or written representations by Defendant which would be deceptive to a

_____

[15] *But see* Haines v. State Auto Prop. & Cas. Ins. Co., CA No. 08-5715, 2009 U.S. Dist. LEXIS 52325, *21, n.3 -*25 (E.D. Pa. June 18, 2009), recognizing the conflict between the Pennsylvania Superior and Commonwealth Courts on this question and concluding that for the purposes of evaluating a motion for leave to amend the complaint, the plaintiffs need not allege common law fraud to state a claim under the catch-all provision, with the proviso that the parties could revisit this question at summary judgment; and Kamara v. Columbia Home Loans, LLC, CA No.08-5998, 2009 U.S. Dist. LEXIS 66003, *12-*13 (July 24, 2009), noting split of authority, but concluding without further analysis that because the plaintiff had failed to show any deceptive or fraudulent conduct on the part of the defendants, the CPL claim would be dismissed.

consumer.[16] In fact, reading the Complaint as broadly as possible reveals no representations by Ford which could be considered deceptive except, perhaps, its alleged decision to market "the product as new and defect free while at the same time knowing the product contained a very dangerous defect." (Complaint, ¶ 34.A.ii.)

We conclude, based on the almost universal agreement by the district courts of this circuit following the Court of Appeals' decision in Hunt, which in turn relied on the Pennsylvania Supreme Court holding in Yocca, that a plaintiff must allege and show justifiable reliance for claims brought under the catch-all provision of the Consumer Protection Act. See Hunt, 538 F.3d at 226-227 ("In sum, the Supreme Court of Pennsylvania has announced and applied a broad rule that private plaintiffs must allege justifiable reliance under the Consumer Protection Law. We thus think it imprudent to create an exception here for plaintiffs suing under the 'deception' prong of the [CPL] catch-all provision, and we decline to do so.") Plaintiffs here have not made such allegations in their Complaint and we conclude that amending the complaint to incorporate such allegations would be futile in light of other equally important shortcomings.

---

[16] To the extent Plaintiffs might argue that they are entitled to a presumption of reliance, such an argument was rejected by the Court of Appeals in Hunt which explicitly noted that the Pennsylvania Superior Court in Debbs v. Chrysler Corp., 810 A.2d 137, 157 (Pa. Super. Ct. 2002), had limited such a presumption to instances in which the plaintiff and defendant were in a fiduciary relationship, clearly not the case here. See Hunt, 528 F.3d at 227 and n. 17.

Under the Consumer Protection Law, a plaintiff must also show that as a result of the defendant's fraudulent or deceptive conduct, he or she suffered an "ascertainable loss of money or property."  73 P.S. § 201-2(4)(xxi).  "[A] class member cannot maintain an action under the [CPL] unless he or she can establish an ascertainable loss as a result of the alleged violation."  Allen v. Holiday Universal, CA No. 05-5726, 2008 U.S. Dist. LEXIS 19187, *86 (E.D. Pa. Mar. 11, 2008), citing Weinberg, 777 A.2d at 442. Plaintiffs argue correctly that while there may be some individual differences in the amount of damages, such discrepancies are not sufficient to defeat class certification.  (Plfs.' Memo at 13.) However, they fail to recognize that the threshold questions do not concern the amount of the individual damages but whether or not the individual injury occurred. See Newton, 259 F.3d at 188 ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury."))  "It is well established that cost of repair constitutes a quantifiable measure of damages."  Atlass v. Mercedes-Benz USA, LLC, CA No. 07-2720, 2007 U.S. Dist. LEXIS 72603, *23 (D. N.J. Sept. 25, 2007).

Here, Plaintiffs's current class description does not incorporate any element of loss. In the Complaint, they alleged that the class membership was limited to Ford-250 or -350 owners who "were forced to sell or trade the vehicle at a loss because the

24

extreme front end oscillation" (Complaint, ¶¶ 3, 14-15), a
statement which identifies the financial injury each member of the
class is alleged to have experienced. They also alleged that "due
to the non-conformities [of the vehicle] the residual value of the
VEHICLE has been substantially impaired." (Id., ¶ 35.B
(capitalization as in original.)) These are each ascertainable
monetary losses, although they would vary from plaintiff to
plaintiff. Now, however, no such losses are incorporated in the
class description which merely requires the member to have
purchased or leased a Ford-250 or -350 vehicle from a Pennsylvania
dealership. Thus, membership in the class does not, under the
current definition, require the consumer to show either (1) he
lost money when he sold or traded in his vehicle because of the
front end oscillation, (2) his vehicle has an ascertainable
diminished price as a result of the oscillation, or (3) he was
forced to pay for the cost of repairing his vehicle when the
oscillation defect occurred outside the warranty period, an obvious
type of ascertainable loss never mentioned in the Complaint.

Under the current definition, any purchaser or lessee of a
Class Vehicle would be presumed a member of the class. Therefore,
to determine if a particular class member suffered an ascertainable
loss, the Court would need to inquire into the individual
circumstances of the purchase or lease, whether the vehicle
experienced the Oscillation Defect, whether the consumer paid for

25

repairs, and/or whether when he traded or sold the vehicle, he received a lower price as a result of the Oscillation Defect. Such a detailed factual analysis would be an unconscionable use of the court's time and makes this case unsuitable for class treatment. Certification should be denied where "[d]etermining membership in the class would essentially require a mini-hearing on the merits of each case." Forman, 1995 U.S. Dist. LEXIS 14547 at *5.

As the Third Circuit has stated, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Newton, 259 F.3d at 172 (internal citation omitted.) Here, each class member would have to show not only justifiable reliance but also loss as a result of that reliance, aspects subject to individual, rather than common questions of law or fact. We conclude that such lack of commonality renders this case unsuitable for class treatment.

3. *Typicality:* Rule 23(a)(3) provides that the typicality requirement is satisfied if the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement seeks to assure that claims of the class and the representatives are sufficiently similar that the representatives will work for the benefit of the entire class through the pursuit of their own goals. Stewart, 275 F.3d at 228, *citing* 5 James Wm. Moore *et al.*, Moore's Federal Practice § 23.24[1] ("The typicality inquiry centers on

26

whether the interests of the named plaintiffs align with the
interests of the absent members.")

"[C]ases challenging the same unlawful conduct which affects
both the named plaintiffs and the putative class usually satisfy
the typicality requirement irrespective of the varying fact
patterns underlying the individual claims." Baby Neal, 43 F.3d at
58 (citation omitted.)    Where the situations of the named
plaintiffs and the class members reflect "even relatively
pronounced factual differences," the typicality requirement is met
as long as there is a "strong similarity of legal theories." Id.
"Where an action challenges a policy or practice, the named
plaintiffs suffering one specific injury from the practice can
represent a class suffering other injuries, so long as all the
injuries are shown to result from the practice." Id., 43 F.3d at
58, citing Falcon, 457 U.S. 147 at 157-159.

As with commonality, the threshold for satisfying the
typicality requirement is relatively low. Newton, 259 F.3d at 183
("We have set a low threshold for satisfying both requirements");
Thomas v. NCO Fin. Sys., Inc., CA No. 00-5118, 2002 U.S. Dist.
LEXIS 14157, *7-*8 (E.D. Pa. Aug. 1, 2002) ("Generally, the
typicality requirement is satisfied where all claims arise from the
same alleged fraudulent scheme.")    The named plaintiffs' claims
"only need be sufficiently similar to allow the court to conclude
that (1) the representative will protect the interests of the

27

class, and (2) there are no antagonistic interests between the representative and the proposed class." Duffy v. Massinari, CA No. 99-3154, 2001 U.S. Dist. LEXIS 7965, *14 (E.D. Pa. June 18, 2001) (internal quotation omitted.)    In short, "[t]he typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the named absentees." Baby Neal, 43 F.3d at 57.

Plaintiffs here argue that the typicality requirement has been met because the individual and class claims are based on the same conduct and the same theory of liability.    That is, (1) Ford knew the Class Vehicles exhibited "violent and uncontrollable shaking," (2) divisions within the company had concerns about the design of the Class Vehicles; and (3) despite this knowledge, Ford never informed consumers of this condition and actively tried to conceal it or blame it on the consumer. (Plfs.' Memo at 14-15.)

Defendant argues that the claims of Mr. Lewis and Mr. Trapuzzano are not typical of those of the purported class because unlike the named Plaintiffs, most members of the class have never experienced any significant vibration or oscillation. (Def.'s Memo at 23, n.4.)  However, Ford fails to provide any objective evidence to support this position, such as statistics about the number of vehicles sold in Pennsylvania which have not been serviced as a

28

result of the Oscillation Defect. Defendant does not argue that either of the named Plaintiffs is subject to any unique defense, that is, a defense which "will play a significant role at trial," causing the parties to

> spend much of their time and effort leading up to and at trial on issues that bear only on the specifics of the class representative's particular claim, and will not illuminate, clarify, or assist in determining the liability defendants have to the class as a whole, and will distract the litigants from the concerns of the class.

Richburg v. Palisades Collection LLC, CA No. 07-7, 2008 U.S. Dist. LEXIS 25299, *10 (E.D. Pa. Jan. 28, 2008), *citing* Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir. 2006).

In the absence of any substantive argument by Defendant on this point and, based on Plaintiffs' description of the same deceptive conduct by Ford in failing to alert any prospective buyer of the likelihood that their vehicles were subject to the "violent and uncontrollable shaking," we conclude Plaintiffs have established that their individual claims against the Defendant are typical of those of the putative class members.

4. *Adequacy of Representation:* The final criterion under Rule 23(a) is that the class representative and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As noted above, this requirement merges in part with the typicality requirement because the court must again consider if the interests of the named plaintiffs conflict

with those of the class.  Johnston, 265 F.3d at 185.  The court
must also determine if the proposed counsel is capable of suitably
representing the class.  Id.  The court will particularly consider
whether the "attorneys for the class representatives are
experienced and qualified to prosecute the claims on behalf of the
entire class."  Baby Neal, 43 F.3d at 55.

Plaintiffs assert that "absent any evidence to the contrary,
it is typically presumed that the adequacy requirement has been
met."  (Plfs.' Memo at 15, citing Slapikas, 2008 U.S. Dist. LEXIS
25254 at *34, and Alba Conte & Herbert Newberg, Newberg on Class
Actions § 7:24 (4th ed. 2002).)  They provide an affidavit from each
named Plaintiff in which he indicates he is a member of the
proposed class and has no interests antagonistic to those of the
other members; he understands his duty to, and will act in the
interests of the class.  (Plfs.' Memo at 16, see also Exhibits C
and E thereto, "Affidavits.")  A class representative need only
possess "a minimal degree of knowledge necessary to meet the
adequacy standard."  Szczubelek v. Cendant Mortgage Corp., CA No.
00-2858, 2002 U.S. Dist. LEXIS 26041, *29 (D. N.J. Mar. 31, 2003).
Plaintiffs' affidavits reflect that they do possess at least a
rudimentary understanding of their role in this litigation.[17]  (See

_____

[17]  The Court notes, however, that Plaintiffs apparently do not
completely understand the scope of the proposed class since neither
affidavit uses the same class description as that proposed in the
brief in support of their motion for certification.  However, such
minimal errors would not disqualify them from acting as class
representatives.  See Mueller v. CBS, Inc., CA No. 99-1310, 2001 U.S.

30

Affidavits, ¶ 4.)

Defendants raise no explicit objections to the adequacy of the named Plaintiffs. However, they argue that this is the unusual case in which there is reason to believe that counsel, Mitchell & Bolliger,[18] LLC, may not be adequate to represent the class. (Def.'s Memo at 23-24.)   Plaintiffs, on the other hand, argue that it is presumed that "all members of the bar in good standing are competent," that the firm "practices almost exclusively in the area of consumer law," and that counsel have brought two other class actions related to the Class Vehicles.   (Plfs.' Memo at 15-16.)

"A party challenging the Class' representation has the burden to prove that the representation is not adequate." <u>Varacallo v. Mass. Mut. Life Ins. Co.</u>, CA No. 04-2702, 2005 U.S. Dist. LEXIS 2248, *73 (D. N.J. Feb. 2, 2005). Here, Defendant raises three arguments concerning counsel's adequacy.   First, Plaintiffs' counsel have "almost no experience in class action litigation" in that the two class actions which they have litigated are both similar to this case and both have been unsuccessful. (Def.'s Memo at 23-24.) Second, in another class action, <u>Seyboth v. General Motors Corp.</u>, the court negatively commented about counsel's

---

Dist. LEXIS 9466, *33 (W.D. Pa. Jan. 31, 2001) (the adequacy of putative class representatives does not depend on their legal knowledge, nor are they required to know all the facts about the class as a whole.)

[18] Although Aldo Bolliger is listed as co-counsel in this case, no affidavit or description of his qualifications to represent the class is provided.

conduct and failure to meet the deadline for filing for class certification under Florida law and concluded that these inadequacies "call[ed] into question Plaintiff's ability to adequately protect the interests of the class." Finally, counsel's performance in this case demonstrates an "almost complete unfamiliarity with controlling case law," and a lack of anything more than "the most basic evidence and argument" in support of the motion for class certification. (Def.'s Memo at 24-25.)

The affidavits provided by the named Plaintiffs both state that they "believe Mitchell & Bolliger, PLLC to be more than adequate representation for myself and the class members." (Affidavits, ¶ 13.) A plaintiff's choice of counsel "should negatively impact our determination of adequacy at this early stage only if the proposed lead counsel is 'so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class.'" <u>In re Vicuron Pharms., Inc. Sec. Litig.</u>, CA No. 04-2627, 2004 U.S. Dist. LEXIS 26735, *11 (E.D. Pa. Oct. 6, 2004), <i>quoting</i> <u>In re Cendant Corp. Litig.</u>, 264 F.3d 201, 266 (3d Cir. 2001). One of the ways in which counsel with limited experience in the discipline pertinent to the claims brought in the suit may prove his competence is the quality of the briefs or the arguments presented during the early stages of litigation. <u>Vinson v. Seven Seventeen HB Phila. Corp. No. 2</u>, CA No. 00-6334, 2001 U.S. Dist. LEXIS 25295, *82 (E.D. Pa. Oct. 31, 2001), <i>citing</i> 5 Charles

32

A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>
§ 1769.1 (1986).

The Court reluctantly agrees with Defendant that Plaintiffs'
counsel, to date, have not established a track record of success in
conducting class action litigation.   A comprehensive LEXIS search
of federal and state reported opinions[19] reveals seven cases (other
than this matter) in which Attorney Mitchell acted on behalf of
plaintiffs, two of which were class action suits.   <u>Brisson v. Ford
Motor Co.</u>, brought in the U.S. District Court for the Middle
District of Florida, was almost identical to this case in that it
alleged breach of express and implied warranties under the
Magnuson-Moss Warranty Act ("MMWA") due to extreme front end
oscillation in 2005-2007 Ford-250 and -350 trucks.   <u>Brisson</u>, 602 F.
Supp.2d 1227 (M.D. Fla. 2009).   The case was dismissed pursuant to
Fed. R. Civ. P. 12(b)(6) without leave to amend because the court
concluded that the plaintiff had (1) failed to recognize that where
"the facts do not substantiate application of any particular
foreign law, the forum generally applies the law of the state in
which it sits," and consequently had erred in his argument that
Delaware, rather than Florida, law should apply; (2) failed to

---

[19]   The Court recognizes that counsel may have represented
plaintiffs in cases without reported opinions.   However, this search
revealed a number of cases other than those reported by either
Plaintiffs or Defendant.   Plaintiffs do not identify any class actions
other than <u>Brisson</u> and an unreported case now pending in the 12th
Judicial Circuit in Florida, <u>Cramer et al. v. Ford Motor Co.</u>, Case No.
2007 CA 2135.

plead the necessary elements of a claim for breach of an express warranty brought under the MMWA; and (3) failed to allege privity of contract necessary under Florida law to recover under a breach of implied warranty claim.   <u>Brisson</u>, 602 F. Supp.2d at 1231-1232. Moreover, the court pointed out that counsel had represented the plaintiffs in a similar case brought against Ford under the MMWA, noting that

> [b]ecause counsel for Plaintiffs in this case were also counsel for plaintiff in the Ocana case, the Court can reasonably presume that prior to instituting this action on December 16, 2008, they were aware of the pleading requirements imposed by the Ocana court in October of 2008 on plaintiffs seeking to bring a cause of action in Florida under the MMWA for breach of an express warranty. . . .Despite counsels' awareness of these pleading requirements, they failed to comply with Ocana either in the original complaint or the amended complaint. Consequently, the Court will assume that Plaintiffs are unable to satisfy the pleading requirements of Ocana so that permitting them to file a second amended complaint would be an exercise in futility.

<u>Brisson</u>, 602 F. Supp.2d at 1233, n. 7, *citing* <u>Ocana v. Ford Motor Co.</u>, 992 So.2d 319 (Fla. Dist. Ct. App. 2008), affirming dismissal with prejudice of MMWA breach of express and implied warranty claims for failure to state a cause of action and for lack of privity under Florida state law.

The second putative class action, also from the Middle District of Florida, had been brought in state court and removed to federal court by the defendant. *See* <u>Seyboth v. GMC</u>, CA No. 07-2292, 2008 U.S. Dist. LEXIS 37736 (M.D. Fla. May 8, 2008). The class action allegations in that case were dismissed because

34

_

Seyboth's counsel failed to observe a local rule requiring motions
for class certification to be filed within 90 days of the date on
which the initial complaint was filed unless the time period was
extended by the court. Counsel filed neither of the required
motions in a timely manner, then when the omission was brought to
his attention, filed a response representing that his failure was
due to "an error in calculating time" without further explanation.
The court found this mistake did not constitute excusable neglect,
and concluded that counsel's "failure to timely pursue discovery
and timely file (or move for an extension to file) the motion for
class certification calls into question [his] ability to adequately
protect the interests of the class." Seyboth, 2008 U.S. Dist.
LEXIS 37736 at *5. The court therefore granted the defendant's
motion to strike the class allegations and remanded the case for
consideration of the remaining state law claims. Id. at *6-*7.

These cases show that counsel for Plaintiffs have been
involved in class action litigation only since approximately 2007
when Seyboth was brought in Florida.[20] Neither Seyboth nor Brisson
proceeded beyond the very earliest pleading stages, having been
dismissed as a matter of law (Brisson), or as a result of counsel's

---

[20] It appears from the case designation that Cramer was also
brought in 2007. However, Plaintiffs have provided no information
about this case; all the Court has been able to discern from a LEXIS
search is that the Court of Appeal for the Second District of Florida
denied the plaintiffs' motion for a writ of certiorari in September
2008, without opinion. See Cramer v. Ford Motor Co., Case No. 2D08-
4502, 991 So.2d 862 (Fla. Dist. Ct. App. 2008).

35

lack of diligence (<u>Seyboth</u>.) <u>Ocana</u> was similarly unsuccessful, in part for the same failures on the part of Plaintiffs' counsel.

In sum, based on their past performance, there is some question about the ability of Plaintiffs' counsel to represent a class adequately in this case. They have not demonstrated a track record of success in the other class actions of which the Court is aware, nor have they demonstrated a firm grasp of the law interpreting the Pennsylvania statute on which they rely. We also find the briefs in support of the motion for class certification and in reply to the Defendant's response thereto to be somewhat disappointing in their absence of substantive analysis. These concerns, standing alone, would weigh against class certification.

C.   Rule 23(b)(3) Analysis

As noted above, Plaintiffs seek certification only under the third prong of Rule 23(b), which requires a showing that

questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

1.   *Predominance:* "The predominance requirement tests whether the class is sufficiently cohesive to warrant adjudication by representation, and mandates that it is far more demanding than the Rule 23(a)(2) commonality requirement." <u>Danvers Motor Co. v. Ford Motor Co.</u>, 543 F.3d 141, 148 (3d Cir. 2008) (internal

quotation omitted); *see also* <u>Hydrogen Peroxide</u>, 552 F.3d at 310-311.

"Unlike commonality, predominance is significantly more demanding, requiring more than a common claim." <u>Newton</u>, 259 F.3d at 187; *see also* <u>Amchem Prods. v. Windsor</u>, 521 U.S. 591, 623-624 (1997) ("the predominance requirement is far more demanding [than commonality.") The two requirements have been distinguished by the U.S. District Court for the Middle District of Pennsylvania thus:

> Commonality measures the sufficiency of the evidence, testing only whether a plaintiff has properly alleged a single common issue, while predominance examines the weight of the evidence, analyzing whether the number of common issues clearly outweighs individual issues.

<u>Lester v. Percudani</u>, CA No. 01-1182, 2003 U.S. Dist. LEXIS 16167, *22, n.8 (M.D. Pa. Sept. 15, 2003).

It logically follows that if Plaintiffs have failed to satisfy the criteria for showing commonality, they cannot satisfy the more strenuous demands of the predominance analysis. As the Court of Appeals has pointed out, "Clearly, if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of 'questions of law and fact common to the members of the class.'" <u>In re Linerboard Antitrust Litig</u>, 305 F.3d 145, 156 (3d Cir. 2002), *cert. denied sub nom* <u>Gaylord Container Corp. v. Garrett Paper, Inc.</u>, 538 U.S. 977 (2003). As discussed at length above, the essential CPL elements of justifiable reliance and ascertainable loss require individual

treatment. *See* <u>Dawson v. Dovenmuehle Mortg., Inc.</u>, CA No. 00-6171, 2003 U.S. Dist. LEXIS 6574, *14-*15 (E.D. Pa. Mar. 31, 2003) ("Because reliance is an essential element that must be proven in [CPL]. . .claims, the court finds that individual questions of law and fact predominate over any common questions with respect to the pending claim, thereby precluding class certification pursuant to Rule 23(b)(3).") We conclude that Plaintiffs have failed to satisfy the predominance prong of Rule 23(b)(3).

2. *Superiority:* Under Rule 23(b)(3), the Court must determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." <u>In re Prudentia.</u> <u>Ins. Co. Am.</u>, 148 F.3d 283, 316 (3d Cir. 1998) (quotation omitted.) "Having determined that the class. . .does not meet the 'predominance' requirement of Rule 23(b)(3), we need not dwell at length on the superiority requirement of the rule, inasmuch as failure to meet any of the requirements of Rules 23(a) and (b) precludes certification of a class." <u>In re LifeUSA Holding</u>, 242 F.3d 136, 147 (3d Cir. 2001) (citations omitted.)

D. <u>Conclusion</u>

We conclude that Plaintiffs have failed to establish by

a preponderance of the evidence commonality and predominance of common over individual issues.  Adequacy of representation is also questionable.    Plaintiffs' motion for class certification is therefore denied.  An appropriate order follows.

August **25**, 2009

William L. Standish
United States District Judge

39